**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 14, 2012**

# In the Court of Appeals of Georgia

A12A0240. 3 WEST INVESTMENTS, LLC et al. v. HAMILTON   DO-011
    STATE BANK.

DOYLE, Presiding Judge.

Bartow County Bank ("BCB"), the predecessor to Hamilton State Bank ("HSB"), sued 3 West Investments, LLC, Dennis Graham, Michael Allen, and Christie Graham (collectively, "the defendants") to recover a deficiency on a loan following a nonjudicial foreclosure sale of collateral property.[1] The defendants contended that HSB was precluded from seeking a deficiency judgment because BCB had previously foreclosed on property that secured the loan without obtaining judicial confirmation of the foreclosure sale. The parties filed cross-motions for partial

---

[1] BCB's complaint contained other claims as well, but they are not relevant to this appeal. Further, although there were additional defendants listed in the complaint, they are not parties to this appeal.

summary judgment on this issue, and the trial court ruled in favor of HSB, concluding that it could pursue a deficiency judgment against the defendants. The defendants appeal this ruling, and we affirm, for the reasons that follow.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

The relevant facts in this case are undisputed. The record shows that on February 11, 1998, Dennis Graham and Allen borrowed $211,611.50 from BCB to acquire and improve property located at 301 N. Tennessee Street in Cartersville, Georgia. On December 15, 1998, they borrowed an additional $147,955 from BCB to purchase and improve property located at 110 McEver Street in Cartersville, which property is contiguous to the 301 N. Tennessee Street property. By virtue of dragnet clauses contained in the security deeds, the two loans were cross-collateralized and the two parcels (hereinafter the "Real Estate Collateral") secured both loan

---

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

obligations.[3] On May 31, 2001, the two loans were consolidated, and the consolidated loan was renewed twice, with the last renewal occurring on October 21, 2009, when BCB renewed the outstanding principal balance of $190,676.94 (hereinafter, "Loan 608076").

On December 17, 2007, 3 West borrowed $7,056,551 from Unity National Bank ("Unity"), and the loan ("3 West Loan") was secured by commercial property located near Euharlee, Georgia. The Unity note was guaranteed by Dennis Graham, Allen, and Jimmy Don Crane. Crane's guarantee was secured by commercial real estate; Graham's and Allen's guarantees were unsecured, but they caused Millennium Commercial Contractors, LLC, an entity controlled by them, to pledge commercial property to secure their guaranties. Unity sold a participation in the 3 West loan to BCB. The participation agreement provided that all payments for the 3 West Loan were owed to Unity, who collected the payments as BCB's agent.[4] The 3 West Loan

---

[3] Specifically, the December 15, 1998 security deed stated: "It is the intention of this instrument to secure not only the indebtedness hereinabove described along with any and all renewals and extensions thereof, in whole or in part, but also any and all other and further indebtedness now owing or which may hereafter be owing, however incurred, to Grantee, its successors and assigns, by Grantor and Grantor's successors in title."

[4] BCB could not, however, accelerate the balance, declare a default, or begin collection activity on the 3 West Loan of its own volition.

3

was renewed twice, with the final renewal occurring on May 28, 2009, in the amount of $7.4 million. Graham, Allen, and Crane guaranteed the payment of the renewal note to Unity; Crane's guaranty was secured, while Graham's and Allen's were not. Again, Unity sold a participation in each renewal to BCB.

On October 21, 2009, Graham and Allen borrowed $250,000 from BCB to complete a sewer line to property owned by 3 West. The loan ("Loan 20030") was secured by the Real Estate Collateral, and was renewed on February 19, 2010, in the amount of $250,000.

3 West subsequently defaulted on the 3 West Loan when it failed to make the interest payment due on December 5, 2009. On March 25, 2010, Unity assigned its interest in the 3 West Loan to BCB, including the security documents and guaranties by Graham, Allen, and Crane. Unity simultaneously purchased a 25.34 percent interest in the 3 West Loan.

On March 26, 2010, banking regulators closed Unity, and Unity's banking operations were purchased by Bank of the Ozarks. On May 28, 2010, BCB, with the Bank of the Ozarks – Unity's successor – declared the 3 West Loan in default, and

on July 7, 2010, BCB sued the defendants seeking to recover the full amount due on the 3 West Loan.

On July 6, 2010, BCB declared Loans 608076 and 20030 in default and accelerated the balance on those due by Graham and Allen based on their guaranty obligations on the 3 West Loan. On December 7, 2010, BCB foreclosed on the security deeds for Loans 608076 and 20030 by selling the Real Estate Collateral. BCB then bid for and purchased the Real Estate Collateral for $800,000. The purchase price was applied to pay in full the outstanding balances on Loans 608076 and 20030, and the remaining balance of $380,820.30 was applied toward Graham's and Allen's guaranties on the 3 West Loan. BCB did not seek to confirm the foreclosure sale pursuant to OCGA § 44-14-161 (a).

Following the nonjudicial foreclosure sale, the parties filed cross-motions for summary judgment as to the issue of whether BCB's failure to seek confirmation of the foreclosure precluded it from obtaining a deficiency judgment against the defendants. On May 24, 2011, HSB was substituted as the party plaintiff for BCB. The trial court subsequently granted partial summary judgment to HSB and denied the defendants' motion for partial summary judgment, concluding that

the note obligations from [d]efendants Graham and Allen are separate and distinct obligations from the 3 West Loan and guaranties. . . . [T]he dragnet provision . . . alone is not enough to make [d]efendants' obligation inextricably intertwined. The [c]ourt finds that the [p]laintiff was not required to confirm the foreclosure sale as a condition precedent to seeking judgment for the deficiency against [d]efendants.

The defendants appeal, arguing that the trial court erred by denying their motion for partial summary judgment and granting HSB's motion for partial summary judgment. We disagree.

The issue before the trial court was whether HSB's failure to confirm the foreclosure sale pursuant to OCGA § 44-14-161 (a) bars recovery of the outstanding balance on the 3 West Loan. In Georgia,

> [a] creditor may not seek a deficiency judgment with respect to any real estate sold on foreclosure unless a confirmation of the sale is obtained. OCGA § 44-14-161. A deficiency judgment is the imposition of personal liability on [a] mortgagor for [the] unpaid balance of mortgage debt after foreclosure has failed to yield [the] full amount of due debt.[5]

With regard to deficiency judgments, OCGA § 44-14-161 (a) provides that

---

[5] (Punctuation omitted.) *C.K.C., Inc. v. Free*, 196 Ga. App. 280, 282 (2) (395 SE2d 666) (1990).

6

[w]hen any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and *at the sale the real estate does not bring the amount of the debt secured by the deed*, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings

obtains a judicial confirmation of the sale.[6]

Here, the proceeds from the foreclosure sale exceeded the amounts owed on Loans 20030 and 608076, so there was no need to pursue a deficiency judgment as to those loans.[7] However,

[t]his Court has applied OCGA § 44-14-161 (a) to foreclosure proceedings on separate debts which are inextricably intertwined to prevent creditors from circumventing the statute's mandates by making successive loans against the security of the same property. This prevents creditors from avoiding the very purpose of the confirmation statute; that being to protect debtors from deficiency judgments when their property is sold at a foreclosure sale for less than its market value.[8]

---

[6] (Emphasis supplied.)

[7] The proceeds from the foreclosure applied by BCB to the 3 West Loan did not cover the outstanding balance on that loan, which balance BCB seeks to recover in this action.

[8] (Citations and punctuation omitted.) *Iwan Renovations, Inc. v. North Atlanta Nat. Bank*, 296 Ga. App. 125, 128 (1) (673 SE2d 632) (2009).

7

Debts that are "'secured by the same property, held by the same creditor and with the assumption of the debt, [and] owed by the same debtor . . . are inextricably intertwined. They are not independent of each other, and a foreclosure of one affects the other.'"[9]

The confirmation requirement of OCGA § 44-14-161 (a) does not apply to the instant case because the 3 West Loan is not inextricably intertwined with Loans 608076 and 20030. Loan 608076 and Loan 20030, between Graham and Allen and BCB, were executed in 1998 and 2009, respectively. The 3 West Loan was executed in 2007 between 3 West and Unity. Loans 608076 and 20030 were both secured by the Real Estate Collateral. The 3 West Loan was secured by the Euharlee property, and Graham's and Allen's guaranties for the 3 West Loan were unsecured. Thus, we conclude that Loans 608076 and 20030 are separate from the 3 West Loan,[10] and

---

[9] *Tufts v. Levin*, 213 Ga. App. 35, 37 (2) (443 SE2d 681) (1994). See also *Oakvale Road Assoc., Ltd. v. Mtg. Recovery Fund-Atlanta Pools*, 231 Ga. App. 414, 416 (499 SE2d 404) (1998) (physical precedent only).

[10] The fact that Loan 20030 was incurred to complete a sewer line to the 3 West property is not enough, in an of itself, to render the 3 West Loan and Loan 20030 inextricably intertwined, given the fact that the lenders were different and the distinctions regarding collateral.

8

confirmation of the foreclosure sale was not required in order for HSB to pursue collection under the 3 West Loan.[11]

We also reject the defendants' argument that the dragnet clause contained in the initial loans effectively merged the debts into one debt requiring judicial confirmation of the foreclosure sale. OCGA § 44-14-1 (b) limits the operation of dragnet clauses to debts "arising ex contractu . . . between the original parties to the

---

[11] See *Baby Days, Inc. v. Bank of Adairsville*, 218 Ga. App. 752, 754 (2) (463 SE2d 171) (1995) (failure to confirm foreclosure did not bar the plaintiff from suing on the remaining debt because: "(a) [t]he loans were not to the same debtor; (b) the debtors executed the loan instruments at different times; (c) each loan was for a separate and distinct purpose . . . ; and (d) the corporate debt was backed by certain securities not serving as collateral as to [the other] note and loan"); *Clements v. Fleet Finance*, 206 Ga. App. 736, 737-738 (426 SE2d 910) (1992) ("*two* separate debts evidenced by *two* separate notes and secured by *two* separate security deeds" did not merge) (emphasis in original) (physical precedent only); *Vaughn & Co., Ltd. v. Saul*, 143 Ga. App. 74, 77 (1) (237 SE2d 622) (1977) ("We hold that the present action is not to recover a *deficiency* judgment on the debt for which foreclosure was had, but to recover on a separate, subsequent and different note [two years] later for a different debt and for which a conveyance of other property was made as security. The note sued upon is a separate transaction from that which was the basis for foreclosure, is not within the prohibition of [OCGA § 44-14-161(a)], and [appellee bank] was not barred from bringing action thereon.") (emphasis in original). Compare *Iwan*, 296 Ga. App. at 129 (1) (two debts were inextricably intertwined because the notes "were secured by two separate security deeds, the notes were incurred only seven months apart for the same purpose, . . . both deeds pertained to the exact same property, [and] both notes were always held by the same creditor and both contained a cross-default clause"); *Oakvale Road*, 231 Ga. App. at 417-418 (two debts merged by the dragnet clause in the first note).

security instrument." Here, Graham, Allen, and BCB were the original parties to Loans 608076 and 20030; 3 West and Unity were the original parties to the 3 West Loan, with Graham and Allen as guarantors. Thus, the loans were separate, and this argument is without merit.[12]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[12] See *Vaughn*, 143 Ga. App. at 77 (1); *Baker v. NEI Corp.*, 144 Ga. App. 165, 166 (1) (241 SE2d 4) (1977).