**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1335. FIRST CITIZENS BANK & TRUST, INC. v. RUDDELL, JR.

A14A1336. FIRST CITIZENS BANK & TRUST, INC. v. TWM ENTERPRISES, LLC et al.

A14A1337. FIRST CITIZENS BANK & TRUST, INC. v. PYLOROS, LLC et al.

A14A1338. FIRST CITIZENS BANK & TRUST, INC. v. MARY RUDDELL COULTER FAMILY, LP et al.

A14A1339. FIRST CITIZENS BANK & TRUST, INC. v. PYLORUS 2, LLC et al.

A14A1340. FIRST CITIZENS BANK & TRUST, INC. v. FIRST QUALITY EQUITIES, INC. et al.

A14A1341. FIRST CITIZENS BANK & TRUST, INC. v. ESTATE OF MARY COULTER, et al.

A14A1342. FIRST CITIZENS BANK & TRUST, INC. v. RUDDELL, JR. et al.

PHIPPS, Chief Judge.

In these eight cases, First Citizens Bank & Trust, Inc. (the bank) appeals summary judgments entered against it and in favor of: E. R. Ruddell, Jr.; TWM Enterprises, LLC; Pyloros, LLC; Mary Ruddell Coulter Family, LP; Pylorus 2 LLC; First Quality Equities, Inc.; and the Estate of Mary R. Coulter (collectively, "defendants"). The summary judgments preclude the bank from recovering monies it claimed the defendants owed under various promissory notes, credit agreements, and/or guaranties.[1] For the reasons explained below, the judgments in Case Nos. A14A1335, A14A1336, A14A1338, and A14A1341 are affirmed in part and reversed in part; the judgments in Case Nos. A14A1337, A14A1339, A14A1340, and A14A1342 are reversed.

In 2011, the bank filed eight separate complaints against these various defendants, pursuing in each complaint claims of breach of contract and unjust enrichment. While the cases were pending in the trial court, in April 2012, the bank conducted nonjudicial foreclosure sales of six properties that served as collateral. The

---

[1] For purposes of these appeals, the parties agree that in September 2009, Georgian Bank failed, and the FDIC transferred and assigned assets of Georgian Bank, including the promissory notes and other loan and security documents at issue, to First Citizens Bank & Trust, Inc.

bank did not thereafter seek judicial confirmation of those sales under OCGA § 44-14-161.

The defendants then filed in their respective cases motions for summary judgment, arguing that the bank's failure to obtain confirmation of the six foreclosure sales barred all claims pursued in the eight complaints.[2] More particularly, the defendants asserted that all debts alleged in the complaints were "inextricably intertwined" with the debts that underlay the six foreclosure sales; the defendants then characterized the bank's claims pursued in the complaints as attempts to obtain deficiency judgments; the defendants thus argued that the bank's quest for deficiency "judgment[s] based on loans that are inextricably intertwined to the loans secured by the Foreclosed Properties" must be denied.

---

[2] The defendants adduced evidence that, with respect to six security deeds, Georgian Bank was grantee with grantors: (i) TWM Enterprises, LLC, securing a note executed on January 29, 2009; (ii) T. W. M. Enterprises, LLC, securing a note executed on January 29, 2009; (iii) Ruddell, securing a note executed on September 13, 2005; (iv) Mary Ruddell Coulter Family LP, securing a note executed on April 14, 2008; (v) the Estate of Mary Coulter and First Quality Equities, Inc., securing a note executed on April 14, 2008; and (vi) the Estate of Mary Coulter, securing a note executed on April 14, 2008. The defendants described the properties foreclosed upon as: (1) 481 New Salem Road; (2) 2254 Burnt Hickory Road; (3) 415 Old Canton Road; (4) 7090 Stone Wood Drive; (5) 2725 Mack Dobbs Drive; and (6) 2532 Wildflower Court.

3

The trial court conducted a hearing,[3] then entered orders in June 2013 granting the motions for summary judgment.[4] The summary judgments were expressly premised upon the trial court's determination that the debts underlying the bank's claims were inextricably intertwined with the debts that underlay the foreclosure sales. Having thus lost all its claims as impermissible attempts to obtain deficiency judgments, the bank appeals.

Pursuant to OCGA § 9-11-56 (c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

[3] No transcript of the summary judgment hearing has been included in the appellate records for these cases. Although the initial eight notices of appeal stated that "[a] transcript of proceedings will be filed for inclusion in the record on appeal," eight amended notices of appeal were filed omitting that statement. We thus proceed with appellate review. See generally *Sapp v. Canal Ins. Co.*, 288 Ga. 681, 686 (3) (706 SE2d 644) (2010) (explaining that it cannot be "assum[ed] that a hearing transcript is always necessary to resolve appeals arising from a trial court's determination on summary judgment," and that where "all evidence was submitted to the trial court in advance of the hearing as required under OCGA § 9-11-56 (c), and the hearing consisted simply of oral argument based on evidence already submitted, a transcript of proceedings is not required to enable meaningful appellate review").

[4] The provisions of Georgia's new Evidence Code apply "to any motion made or hearing or trial commenced on or after [January 1, 2013]." Ga. L. 2011, p. 99, § 101. The record reveals that the motions were filed in March 2013, and the hearing was conducted in early June 2013.

4

and that the moving party is entitled to a judgment as a matter of law."[5] "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant."[6] "Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."[7]

"A deficiency judgment is the imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield full amount of due debt."[8] The requirements for obtaining such a judgment are delineated in OCGA § 44-14-161 (a):

---

[5] OCGA § 9-11-56 (c).

[6] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

[7] Id. (citation and punctuation omitted).

[8] *Iwan Renovations v. North Atlanta Natl. Bank*, 296 Ga. App. 125, 127 (1) (673 SE2d 632) (2009), quoting *C. K. C., Inc. v. Free*, 196 Ga. App. 280, 282 (2) (395 SE2d 666) (1990); see *Hill v. Moye*, 221 Ga. App. 411, 412 (1) (471 SE2d 910) (1996) (defining "a 'deficiency judgment' as a judgment for that part of a debt secured by a mortgage not realized from a sale of the mortgaged property") (citation omitted).

When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

The aim of this legislation was "to limit and abate deficiency judgments in suits and foreclosure proceedings on debts."[9] To that end, "[a] creditor may not seek a deficiency judgment with respect to any real estate sold on foreclosure unless a confirmation of the sale is obtained."[10]

"This [c]ourt has applied OCGA § 44-14-161 (a) to foreclosure proceedings on separate debts which are *inextricably intertwined* to prevent creditors from circumventing the statute's mandates by making successive loans against the security

---

[9] *First Nat. Bank & Trust Co. v. Kunes*, 230 Ga. 888, 890 (199 SE2d 776) (1973) (citation, punctuation, and emphasis omitted).

[10] *C. K. C., Inc.*, supra.

6

of the same property."[11] Such an application prevents creditors from "avoiding the very purpose of the confirmation statute[,] that being to protect debtors from deficiency judgments when their property is sold at a foreclosure sale for less than its market value."[12] "As a general rule, two debts that are incurred for the same purpose, secured by the same property, held by the same creditor, and owed by the same debtor are inextricably intertwined."[13] "[The two debts] are not independent of each other, and a foreclosure of one affects the other."[14]

Accordingly, in *C. K. C., Inc. v. Free*,[15] this court barred suit upon a promissory note as an impermissible claim for a deficiency judgment.[16] There, a buyer of certain real estate executed two separate promissory notes in favor of the sellers.[17] One note,

---

[11] *Iwan Renovations*, supra at 128 (1) (citation and footnote omitted; emphasis supplied).

[12] Id. (citation and footnote omitted).

[13] Id.; see *3 West Investments, LLC v. Hamilton State Bank*, 316 Ga. App. 796, 800 (728 SE2d 843) (2012); *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 38 (1) (728 SE2d 714) (2012).

[14] *3 West Investments, LLC*, supra (punctuation and footnote omitted).

[15] Supra.

[16] Id. at 283 (2).

[17] Id. at 280-281.

7

in the amount of $75,195, represented a portion of the down payment under the contract; the second note, in the amount of $500,797.50, represented the balance of the purchase price.[18] Both notes recited that they were secured by the deed to secure debt, which covered the entire property purchased; and the deed to secure debt reciprocally recited that it secured the two notes.[19] Thereafter, the buyers executed a renewal note in the amount of $75,195, which extended and replaced the original $75,195 note; the renewal note recited that it was secured by the same deed referenced in both earlier notes.[20] Upon the buyer's default under both notes, the sellers, inter alia, advertised foreclosure, referencing only the larger note; sold the property at foreclosure to themselves for $504,000; applied for a confirmation of the sale, stating that the total debt comprised of the two notes had not been realized by the foreclosure; and filed a complaint seeking to recover the amounts due under the smaller note.[21] When the confirmation was denied,[22] the buyer moved for summary

---

[18] Id. at 281.

[19] Id.

[20] Id.

[21] Id.

[22] Id.

8

judgment on the ground that the sellers' claim in substance was seeking a deficiency judgment that was barred for failure to obtain a confirmation of the sale.[23] This court agreed, explaining:

> [B]oth notes are clearly secured by the same deed and the same property. The two debts represented purchase money loans and the security for both was the property purchased. . . . The two debts, secured by the same property, held by the same creditor . . . are owed by the same debtor and are inextricably intertwined. They are not independent of each other, and a foreclosure of one affects the other. If the whole of the property is exhausted in foreclosing the first there is still a secured debt for which the holder desired to obtain a deficiency judgment. Notwithstanding the fact that the foreclosure advertisement only referenced the larger note, we deem the instant action to be a deficiency judgment which is barred due to the failure to obtain a confirmation. Summary judgment should have been granted to [the buyer].[24]

This court reached a similar conclusion in *Iwan Renovations v. North Atlanta National Bank*.[25] There, Iwan Renovations executed a promissory note in favor of North Atlanta National Bank in the amount of $338,000 in order to purchase certain

---

[23] Id. at 282 (2).

[24] Id. at 282-283 (3) (citations and punctuation omitted).

[25] Supra.

property and to build a home thereon.[26] Later, the parties to the promissory note executed a "Change in Terms Agreement" that increased the note's principal to $360,150 and extended the maturity date; a month later, the parties again agreed to extend the note's maturity date.[27] In both instances, the security deed was modified to reflect the note's new maturity date.[28] Thereafter, when Iwan Renovations requested additional funds so that it could complete the construction of the home on the property, the parties to the promissory note executed a second promissory note in the amount of $25,000, which note was secured by a second security deed to the same purchased property.[29] In addition, both promissory notes and both security deeds contained a cross-default clause, which stated that a default under one note would be a default under the other.[30] Subsequently, the parties agreed to extend the maturity date for both notes, and the two security deeds were modified to reflect that

---

[26] Id. at 126.

[27] Id.

[28] Id.

[29] Id.

[30] Id.

10

extension.[31] Upon Iwan Renovations' default under both notes, North Atlanta National Bank filed suit seeking the amount owed on both notes.[32] While that lawsuit was pending, North Atlanta National Bank initiated a nonjudicial foreclosure on the property pursuant to the power of sale provision in the first security deed and purchased the property itself at the foreclosure sale for $398,322.15; shortly thereafter, North Atlanta National Bank amended its complaint to reflect that it was seeking to recover only the amount owed on the second promissory note.[33] Iwan Renovations moved for summary judgment, arguing that suit on the (amended) claim was barred as a result of North Atlanta National Bank's failure to confirm the foreclosure sale under the first security deed pursuant to OCGA § 44-14-161.[34] This court agreed, explaining:

> [A]lthough there were two promissory notes that were secured by two separate security deeds, the notes were incurred only seven months apart *for the same purpose*, and *both deeds pertained to the exact same property*. Additionally, both notes were always held by the same creditor

---

[31] Id.

[32] Id. at 126-127.

[33] Id.

[34] Id. at 127 (1).

11

and both contained a cross-default clause. Given such circumstances, the two debts were inextricably intertwined. Thus, [North Atlanta National Bank's] present action is one to recover a deficiency judgment on the debt secured by the first security deed and not to recover on an independent, separate, unsecured obligation.[35]

However, the confirmation requirement of OCGA § 44-14-161 did not operate to bar suit in other cases, where the alleged debts were not inextricably intertwined with the debts that underlay the cited foreclosure sales.[36] Those cases were governed by "the general principle that where there are separate debts arising from separate contractual obligations, the failure to confirm the foreclosure arising from one of the obligations does not bar an action on the separate obligation, even if the obligations are somehow related."[37] Moreover, in *Baby Days, Inc. v. Bank of Adairville*,[38] this court refused to deviate from that general principle on the mere ground that a dragnet

---

[35] Id. at 129 (1) (citation omitted; emphasis supplied).

[36] See, e.g., *3 West Investments, LLC*, supra; *Devin Lamplighter v. American Gen. Finance*, 206 Ga. App. 747, 748 (1) (426 SE2d 645) (1992) (concluding that creditor was not seeking a deficiency as to the debt secured by the deed foreclosed upon, where "there [were] two separate debts, evidenced by two separate notes and secured by two separate security deeds") (emphasis omitted).

[37] *Ward v. Pembroke State Bank*, 212 Ga. App. 322, 324 (441 SE2d 691) (1994) (citations omitted).

[38] 218 Ga. App. 752 (463 SE2d 171) (1995).

clause set forth in a security agreement for one loan "conceivably could be construed as indirectly subjecting the foreclosed real property . . . to constitute additional collateral" on another loan (for which loan the real property did not serve directly as collateral).[39] As this court explained, "[W]e will not allow the separate legal character of [one] loan to be defeated by such indirect means."[40] To do otherwise, this court reasoned, "would set a dangerous precedent for our current credit system," as well as disregard "the well-established appellate principle that 'the law does not entitle one to *profit* by his own wrong.'"[41]

Claiming on motion for summary judgment that the debts alleged in the bank's complaints were inextricably intertwined with the debts that underlay the six foreclosure sales, the defendants asserted that the suits against them all "share[d] a common thread: [Ruddell] is a direct obligor or guarantor." Further, the defendants relied upon circumstances set forth in Ruddell's affidavit. Therein, Ruddell stated that he had been "involved in the real estate business in Cobb County as an investor and as a consultant" for more than 48 years; that one of his "business models" was to "buy

---

[39] Id. at 754-755 (2).

[40] Id. at 755 (2).

[41] Id. (citations and punctuation omitted; emphasis in original).

13

properties that had substantial future value based on the Cobb County (and bordering counties') land plan and other factors such as low cost/high income producing potential"; and that the debts alleged in the eight complaints had been incurred as part of executing that business model. Given those circumstances, the defendants argued to the trial court that the debts underlying the eight complaints and the debts underlying the six foreclosure sales were (i) "incurred for the same purpose: purchasing or refinancing properties that had substantial future value based on the Cobb County land plan and other factors"; (ii) "secured by the same property," by virtue of a dragnet clause set forth in each of the security deeds that underlay the foreclosure sales;[42] and (iii) "held by the same creditor (i.e., [the bank]) and are owed by the same debtor (E. R. Ruddell, Jr.)."

In granting summary judgment to the defendants, the trial court expressly ruled that the debts underlying the bank's claims were inextricably intertwined with the debts that underlay the foreclosure sales. The controlling question in each of these

---

[42] The defendants pointed out that each of the six security deeds stated, "This Deed secures, in addition to the indebtedness evidenced by the Borrower's Promissory Note, all renewals, extension, substitutions and modifications thereof, all other and further indebtedness of any amount which is now or may be hereafter owed by Borrower to Lender, whether individually or jointly with others not parties hereto, and whether direct or indirect, as maker, endorser, guarantor, surety or otherwise."

14

cases on appeal, hence, is whether that ruling was demonstrated by the record. We consider each case in turn.

*Case No. A14A1335*

1. In the complaint underlying Case No. A14A1335, the bank sued Ruddell as borrower of funds on twenty-two promissory notes and two credit agreements.

(a) Two of the twenty-two promissory notes explicitly identified as their collateral a real property which was sold at one of the six foreclosure sales.[43] Each of these two notes stated in its "Prior Note" paragraph: "This is a Renewal of the Note dated 09-13-2005 in the amount of $160,000.00." Moreover, the bank acknowledged in an amended complaint that it had foreclosed on that exact real property and "did not confirm the foreclosure sale."[44] Hence, we find no error in the trial court's determination that the claims relating to those two (renewal) promissory notes impermissibly sought deficiency judgments.[45]

---

[43] The real property is described in the appellate record as: 415 Old Canton Road, Marietta, Cobb County Ga.

[44] See OCGA § 24-8-821 ("Without offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings of the other.")

[45] See *Ward*, supra ("When the instrument sued upon is embraced by the previous foreclosure, it is a deficiency judgment.") (punctuation omitted).

15

(b) But with respect to the remaining 20 promissory notes, the record does not establish that any debt incurred thereby was inextricably intertwined with any debt underlying a foreclosure sale.

(i) Nineteen of those promissory notes were explicitly secured by real properties *distinct* from all six properties foreclosed upon. Furthermore, the dates of these nineteen notes spanned February 22, 2008 through June 1, 2009.

Ruddell has cited no authority that the circumstances relied upon on motion for summary judgment demonstrated that the debts were, as a matter of law, "incurred for the same purpose" and "secured by the same property." And we find none.[46]

---

[46] See *3 West Investments, LLC*, supra at 800-801 (explaining that the loan sued upon was not inextricably intertwined with two loans that underlay two foreclosure sales which had not been confirmed, where, inter alia, the loan sued upon was secured by different real property and was executed on different dates and by different parties than the real estate parcels, dates and parties pertaining to the two loans that underlay the foreclosure sales); *Baby Days, Inc.*, supra at 753-755 (2) (rejecting debtor's defense that "[he] had a single debt to [the creditor] arising out of several contracts, bound together by 'dragnet' clauses, secured by a single security agreement, and collateralized by a single piece of realty which was foreclosed upon without subsequent confirmation of the foreclosure sale"). Cf. *Bank of North Ga.*, supra at 39 (1) (concluding that suits on letters of credit were barred as claims for deficiency judgments relating to notes, where, inter alia, "the letters of credit were secured by *the same* golf course property that secured [the notes]") (emphasis supplied); *Iwan Renovations*, supra at 129 (1) (determining action as one seeking a deficiency judgment, where both notes represented funds for the construction of a single home, and the two debts were secured by "the exact same property" where the home was being constructed); *Ward*, supra at 323 (analyzing the decision in *C. K. C., Inc.*,

16

Generally, even if the obligations are somehow related, where the notes involved are secured by separate deeds to different properties or are not secured at all, suit on one note after foreclosure without confirmation on another note is not prohibited.[47] Here, the bank seeks to recover on separate and distinct notes and for which conveyances of other properties were made as security. Given those circumstances, "the fact that the [bank] did not seek to have the sale[s] of the realty confirmed is irrelevant to [the defendant's] liability."[48] Because the record did not demonstrate that the promissory

---

supra, as resting "in large part on the fact that [the two promissory notes] were secured by the same deed on the same property"); *C. K. C., Inc.*, supra at 282-283 (3) (deeming action as one seeking a deficiency judgment, where both notes were "secured by the same deed and the same property" and the "two debts represented purchase money loans and the security for both [debts] was the property purchased") (emphasis supplied).

[47] See *Baby Days, Inc.*, supra at 754 (2).

[48] Id. at 754-755 (2) (citation and punctuation omitted) (concluding that suit against individual-debtor was not barred for lack of confirmation of foreclosure sale, where the creditor was not seeking a deficiency as to the secured personal debt but recovery on a separate corporate debt, albeit a corporate debt that was guaranteed by the individual-debtor); see *3 West Investments*, *LLC*, supra (concluding that the confirmation requirement did not apply, where the loan sued upon was not inextricably intertwined with loans that underlay foreclosure sales that had not been confirmed); *Vaughn & Co., Ltd. v. Saul*, 143 Ga. App. 74, 77 (1) (237 SE2d 622) (1977) (noting that prior foreclosure was had upon security deed that contained a dragnet clause, yet "hold[ing] that the present action is not to recover a *deficiency* judgment on the debt for which foreclosure was had, but to recover on a separate, subsequent and different note made a year later for a different debt and for which a

17

notes underlying the bank's claims were inextricably intertwined with any debt that underlay one of the six foreclosure sales, the trial court was not authorized to conclude that the bank's claims relating to those promissory notes were barred as impermissible attempts to obtain deficiency judgments.[49]

(ii) For the remaining promissory note, the parties to this appeal have provided no record citation, and we have found no such note. Apparently, the bank adduced instead a document captioned "Note and Loan Modification Agreement."[50] The

---

conveyance of other property was made as security. The note sued upon is a separate transaction from that which was the basis for foreclosure, is not within the prohibition of [OCGA § 44-14-161 (a)], and [appellee bank] was not barred from bringing action thereon.") (emphasis in original); *Clements v. Fleet Finance*, 206 Ga. App. 736, 738 (426 SE2d 910) (1992) (concluding that suit upon a note was not barred for lack of confirmation of a foreclosure sale, where there were "*two* separate debts evidenced by *two* separate notes and secured by *two* separate security deeds") (emphasis in original) (physical precedent only). See generally *C. K. C.*, supra at 282 (2) (reciting principles that "[a]fter an initial foreclosure under a deed with a 'dragnet clause,' a subsequent foreclosure under a separate deed securing separate property is not a deficiency judgment, but is a separate contractual remedy of the creditor not subject to the confirmation requirement"; and that "recovery on a separate, subsequent and different note for a different debt and for which separate property was conveyed is not recovery of a deficiency judgment on a previous note that contained a dragnet clause").

[49] See *3 West Investments, LLC*, supra; *Baby Days, Inc.*, supra at 754-755 (2).

[50] In each "motion for summary judgment and brief in support" filed in the eight cases, the respective defendant(s) expressly acknowledged that in some instances the bank had "attached a modification of the promissory note instead of the

18

document recited that Ruddell and Georgian Bank were extending the maturity date of a specified note;[51] the document recited further that "[t]he Deed to Secure Debt securing the Note (the 'Mortgage'), as modified by this Agreement, shall be modified to reflect the New Maturity date." The "Note and Loan Modification Agreement" did not set forth the real property that served as the security, and the security deed expressly referenced by the "Note and Loan Modification Agreement" is not in the record.

The evidence fell short of establishing that the debt underlying the (modified) promissory note was "incurred for the same purpose" and "secured by the same property" as any debt that underlay one of the six foreclosure sales;[52] Ruddell has cited no authority that the circumstances relied upon on motion for summary judgment nevertheless provided for a determination that the debt represented by the (modified) promissory note was inextricably intertwined with any debt that underlay

_____

actual promissory note"; the defendants did not, however, argue that the failure to adduce the actual promissory notes played a role in establishing a basis for granting any motion.

[51] The "Note and Loan Modification Agreement" was effective May 25, 2008, and modified a note dated April 27, 2006.

[52] Cf., e.g., *Iwan Renovations*, supra; *C. K. C., Inc.*, supra.

one of the six foreclosure sales; and we find none. Given the foregoing, the record did not authorize the trial court's conclusion that the bank's claims relating to that promissory note (as modified) were barred as impermissible attempts to obtain a deficiency judgment.[53]

(c) Each of the two credit agreements was dated June 25, 2008, provided a revolving line of credit up to a specified amount, and stated that it was "unsecured." "The confirmation statute does not bar a subsequent action to recover on an independent, separate, unsecured obligation. It is not within the ambit of the statute requiring confirmation."[54] Even "[a]n unsecured note that is part of the same transaction involving a secured note may be sued upon despite a failure to obtain confirmation of the foreclosure for the secured note."[55]

---

[53] See generally 3 *West Investments, LLC*, supra; *Baby Days, Inc.*, supra at 753-755 (2); *Vaughn & Co., Ltd.*, supra; *Clements*, supra. Cf. *Iwan Renovations*, supra; *C. K. C., Inc.*, supra.

[54] *Kennedy v. Trust Co. Bank*, 160 Ga. App. 734-735 (288 SE2d 87) (1981) ("By its terms, the confirmation statute bars an action to recover a deficiency judgment for debts secured by 'security deeds, mortgages or other lien contracts.'") (citation omitted).

[55] *C. K. C., Inc.*, supra at 282 (2) (citation omitted).

Contrary to the position taken by Ruddell on motion for summary judgment, the record did not establish that the bank's claims against him were barred as impermissible attempts to obtain a deficiency judgment. The argument that the dragnet clause(s) set forth in the security deeds underlying the foreclosure sales "conceivably could be construed as indirectly subjecting [a] foreclosed real property . . . to constitute . . . collateral" on either credit agreement, for reasons articulated in *Baby Days, Inc.*, is unavailing.[56]

The judgment in Case No. A14A1335 is affirmed in part and reversed in part.

*Case No. A14A1336*

2. In the complaint underlying Case No. A14A1336, the bank sued two defendants: (i) TWM Enterprises, as borrower of funds on three promissory notes; and (ii) Ruddell, as personal guarantor of those three loans. Each of the three promissory notes explicitly designated certain real property as its collateral. Each of these promissory notes was dated January 29, 2009.

---

[56] Supra at 755 (2).

21

The real properties so designated in two of the three promissory notes, however, were the *same* properties that were sold at two of the foreclosure sales.[57] And the bank describes in its brief, "In this appeal there are three separate notes, three separate houses, under three separate deeds. [The bank's] foreclosure of two of the security deeds, does not operate to extinguish the debt on the remaining separate and distinct deed." We thus deem as abandoned any attempt by the bank to collect monies relating to two notes, and consider only whether the trial court erred in granting summary judgment as to the third promissory note (described by the bank as the "debt on the remaining separate and distinct deed").

The record shows that such note expressly identified as its collateral certain real property, which was *distinct* from each of the six foreclosed properties. Contrary to the position taken by TWM Enterprises and Ruddell on motion for summary judgment, the record did not establish that the bank's claims against them relating to that note are barred as impermissible attempts to obtain deficiency judgments.[58]

The judgment in Case A14A1336 is thus affirmed in part and reversed in part.

---

[57] The two common real properties are described in the appellate record as: (i) 2254 Burnt Hickory Road, Kennesaw, Cobb County Ga 30064; and (ii) 481 New Salem Road, Kennesaw, Cobb County Ga 30064.

[58] See Division 1 (b) (i), supra.

*Case No. A14A1337*

3. In the complaint underlying Case No. A14A1337, the bank sued two defendants: (i) Pyloros as borrower of funds on four promissory notes; and (ii) Ruddell, as personal guarantor of those notes. Each of the four promissory notes explicitly designated as its collateral certain real property, which was *distinct* from each of the six foreclosed properties. The dates of these four notes spanned July 18, 2006 through March 25, 2009. Contrary to the position taken by Pyloros and Ruddell on motion for summary judgment, the record did not establish that the bank's claims against them with respect to these four notes are barred as impermissible attempts to obtain deficiency judgments.[59]

The judgment in Case No. A14A1337 is reversed.

*Case No. A14A1338*

4. In a fourth complaint, the bank sued two defendants: (i) Mary Ruddell Coulter Family, LP, as borrower of funds on four promissory notes; and (ii) Ruddell, as personal guarantor of those notes. Each of the four promissory notes explicitly identified as collateral certain real property.

---

[59] See Division 1 (b) (i), supra.

One of the four promissory notes, however, was the same note that underlay one of the six foreclosure sales.[60] And the bank recounts in its brief, "While the suit was pending, Appellant foreclosed . . . on the collateral that secured one of the Coulter Family LP notes. Appellant is *not* seeking damages for the foreclosed debts. Instead, Appellant sought damages for the remaining, distinct debt obligations of (i.e., the non-foreclosed notes) . . . Coulter Family LP."[61] We thus deem as abandoned any attempt by the bank to collect monies under that promissory note, and determine only whether the trial court erred in granting summary judgment as to the other three notes.

Each of these three notes explicitly identified as its collateral certain real property, which was *distinct* from each of the six foreclosed properties. Two of the notes were dated April 14, 2008, and the third note was dated December 26, 2008. Contrary to the position taken by Mary Ruddell Coulter Family, LP and Ruddell on motion for summary judgment, the record does not demonstrate that the bank's claims

---

[60] That promissory note was dated April 14, 2008, and it explicitly designated as collateral: 7090 Stone Wood Drive, Marietta, Cobb County, Ga.

[61] (Emphasis in original.)

24

against them with respect to those three promissory notes are barred as impermissible attempts to obtain deficiency judgments.[62]

The judgment in Case No. A14A1338 is affirmed in part and reversed in part.

*Case No. A14A1339*

5. In the complaint underlying Case No. A14A1339, the bank sued two defendants: (i) Pylorus 2, as borrower of funds on three promissory notes; and (ii) Ruddell, as personal guarantor of those notes. Each of the three promissory notes explicitly designated as its collateral certain real property, which was *distinct* from each of the six foreclosed properties. Two of the notes were dated January 9, 2009, and the third note was dated February 10, 2009. Contrary to the position taken by Pyloros 2 and Ruddell on motion for summary judgment, the record does not demonstrate that the bank's claims against them as to these three promissory notes are barred as impermissible attempts to obtain deficiency judgments.[63]

The judgment in Case No. A14A1339 is reversed.

*Case No. A14A1340*

---

[62] See Division 1 (b) (i), supra.

[63] See Division 1(b) (i), supra.

25

6. In the complaint underlying Case No. A14A1340, the bank sued two defendants: (i) First Quality Equities, Inc., as borrower of funds on five promissory notes; and (ii) Ruddell, as personal guarantor of those notes.

Attached to the complaint were three promissory notes, each explicitly designating as its collateral certain real property, which was *distinct* from each of the six foreclosed properties. One of the three promissory notes was dated October 3, 2008, and the other two notes were dated January 9, 2009. Contrary to the position taken by First Quality Equities and Ruddell on motion for summary judgment, the record does not demonstrate that the bank's claims against them with respect to those three promissory notes are barred as impermissible attempts to obtain deficiency judgments.[64]

For the remaining two promissory notes, the parties to this appeal have provided no record citations, and we have found no such notes. Apparently, the bank adduced instead two documents captioned "Note and Loan Modification Agreement."[65] Each of those two documents recited that First Quality Equities and

[64] See Division 1 (b) (i), supra.

[65] See, however, footnote 50, supra.

26

Georgian Bank were extending the maturity date of a specified note;[66] each "Note and Loan Modification Agreement" recited further that "[t]he Deed to Secure Debt securing the Note (the 'Mortgage'), as modified by this Agreement, shall be modified to reflect the New Maturity date." Neither "Note and Loan Modification Agreement" set forth the real property that served as its security, and the record does not contain the security deed(s) expressly referenced by the "Note and Loan Modification Agreement[s]." Contrary to the position taken by First Quality Equities and Ruddell on motion for summary judgment, this record does not establish that the bank's claims against them with respect to those two promissory notes (as modified) were barred as impermissible attempts to obtain deficiency judgments.[67]

The judgment in Case No. A14A1340 is reversed.

*Case No. A14A1341*

7. In the complaint underlying Case No. A14A1341, the bank sued two defendants: (i) the Estate of Mary Coulter, as borrower of funds on three promissory notes; and (ii) Ruddell, as personal guarantor of those three loans. Each of the three

---

[66] One "Note and Loan Modification Agreement" was effective May 25, 2008, and modified a note dated March 9, 2007. The other "Note and Loan Modification Agreement" was effective May 25, 2008, and modified a note dated June 30, 2006.

[67] See Division 1 (b) (ii), supra.

promissory notes expressly identified as its collateral certain real property, and was dated April 14, 2008.

The real properties so designated in two of the three promissory notes, however, were the *same* properties that were sold at two of the foreclosure sales.[68] And as the bank recounts in its appellate brief, "While the suit was pending, Appellant foreclosed, pursuant to its contractual right to do so, on the collateral that secured two of the Coulter notes. Appellant is *not* seeking damages for the foreclosed debts. Instead, Appellant sought damages for the remaining, distinct debt obligations of (i.e. the non-foreclosed note[ ])."[69] We thus deem as abandoned any attempt by the bank to collect monies relating to those two notes, and consider here only whether the trial court erred in granting summary judgment as to the third promissory note (described by the bank as the "remaining, distinct debt obligations").

That note explicitly designated as its collateral real property, which was *distinct* from each of the six foreclosed properties. Contrary to the position taken by the Estate of Mary Coulter and Ruddell on motion for summary judgment, the record did not

---

[68] The two common real properties are described in the appellate record as: (i) 2725 Mack Dobbs Road NW, Kennesaw Ga 30152; and (ii) 2532 Wildflower Court Acworth Ga 30101.

[69] (Emphasis in original.)

establish that the bank's claims against them as related to that note were barred as impermissible attempts to obtain deficiency judgments.[70]

The judgment in Case No. A14A1341 is affirmed in part and reversed in part.

*Case No. A14A1342*

8. In the complaint underlying Case No. A14A1342, the bank sued Ruddell as borrower of funds on three promissory notes.[71]

The parties to this appeal have provided no record citations for those three notes, and we have found no such notes. Apparently, the bank adduced instead three documents captioned, "Note and Loan Modification Agreement."[72] Each document recited that Ruddell and Georgian Bank were extending the maturity date of a specified note;[73] each document further recited that "[t]he Deed to Secure Debt

---

[70] See Division 1(b) (i), supra.

[71] Initially, the bank also sued WTSJ, LLC as a borrower of funds on these three notes. But before the motions for summary judgments were filed in the eight cases, the trial court granted the bank's motion to dismiss WTSJ, LLC.

[72] See, however, footnote 50, supra.

[73] The three "Note and Loan Modification Agreement[s]" were effective May 25, 2008, and modified notes dated July 27, 2005. (Each "Note and Loan Modification Agreement" identified also WTSJ, LLC as a party thereto, as well as a borrower upon the July 27, 2005 note that it modified.)

29

securing the Note (the 'Mortgage'), as modified by this Agreement, shall be modified to reflect the New Maturity Date." None of the "Note and Loan Modification Agreement[s]" set forth the real property that served as its security, and the record does not contain the security deed(s) expressly referenced by the "Note and Loan Modification Agreement[s]." Contrary to the position taken by Ruddell on motion for summary judgment, this record does not establish that the bank's claims against him with respect to those three promissory notes (as modified) were barred as impermissible attempts to obtain deficiency judgments.[74]

The judgment in Case No. A14A1342 is reversed.

*Judgments affirmed in part and reversed in part in Case Nos. A14A1335, A14A1336, A14A1338, and A14A1341; judgments reversed in Case Nos. A14A1337, A14A1339, A14A1340, and A14A1342. McMillian, J., concurs. Ellington, P. J., concurs in judgment only.*

---

[74] See Division 1 (b) (ii), supra.