**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 20, 2019**

# In the Court of Appeals of Georgia

A19A0404. WELLS v. REGIONS BANK.

MARKLE, Judge.

Susan Wells[1] appeals from the trial court's order granting summary judgment to Regions Bank and denying her motion for summary judgment in Regions Bank's breach of contract suit for money due on a line of credit following foreclosure of the property. On appeal, Wells argues that the trial court erred because Regions Bank was required to seek judicial confirmation of the foreclosure before filing the breach of contract suit. After a thorough review of the record, and for the reasons that follow, we affirm the trial court's order denying Wells's motion for summary judgment,

---

[1] Susan and Gordon Wells divorced in 2008 and she is now known by her maiden name, Williams. Because the case style in the trial court and this Court refer to her as Susan Wells, we use that name in the opinion.

vacate the trial court's order granting summary judgment to Regions, and remand the case for further proceedings.

"On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation omitted.) *LeCroy v. Bragg*, 319 Ga. App. 884, 885 (1) (739 SE2d 1) (2013).

So viewed, the record shows that in 1998, Susan and her then-husband Gordon Wells (collectively "the Wellses") purchased property in Gainesville, Georgia. The following year, they obtained a construction loan in the amount of $459,750 to build a house on the property, and they executed a security deed in favor of Regions using the property as collateral. Later that year, they modified this loan to increase the amount of funds to $479,200.

In May 2002, the Wellses opened a revolving line of credit in the amount of $100,000. They executed a second security deed in favor of Regions, using the same property to secure the loan. They used these funds to repair stucco and make other home improvements. The following month, the Wellses purchased the adjacent lakefront property.

In 2005, they opened a second line of credit ("the 2005 line of credit"), and Regions modified the May 2002 security deed to increase the amount of the loan to $240,000 to reflect the new line of credit. This 2005 line of credit was used to pay off the initial line of credit obtained in 2002 and build a dock on the adjacent property.[2]

Susan and Gordon divorced in 2008. Under the terms of the divorce settlement, Gordon retained the marital property and was to remove Susan's name from the mortgage and sell or refinance the property.

Although the Wellses initially made all the payments on the 2005 line of credit, Gordon experienced financial problems after the divorce and ceased making payments, leaving a debt in excess of $200,000. In 2010, Regions entered into a forbearance agreement with the Wellses regarding the outstanding debt on the 2005 line of credit. In this agreement, the Wellses promised to make monthly payments with a final balloon payment due at the end of the term. Additionally, per the terms of this agreement, any default would result in the entire amount being due

---

[2] Although Regions and the Wellses both contend, and the trial court found, that the 2005 line of credit was used to purchase the adjacent property, the records show that the purchase occurred in 2002, prior to the execution of the modification to the security deed for the 2005 line of credit that is at issue in this appeal. This inconsistency only strengthens our conclusion that factual questions remain regarding the purpose of the various loans.

immediately in full. Gordon made the payments under the forbearance agreement as required until August 2012 when he defaulted.

During this same time, Gordon also failed to make the required payments on the construction loan. As a result of the default on the construction loan, Regions foreclosed on the property, selling it at public auction by deed under power of sale for $335,000. Regions then filed a breach of contract action against the Wellses, seeking to collect on the outstanding amount of the 2005 line of credit under the forbearance agreement.

Both Regions and Susan moved for summary judgment.[3] Susan argued that the failure to seek judicial confirmation of the foreclosure waived any right to collect the debt under OCGA § 44-14-161 (a) and barred the instant breach of contract claim. In response, Regions argued that the confirmation requirement in OCGA § 44-14-161 (a) did not apply because the instant suit was not a post-foreclosure deficiency action, and the two loans at issue were not inextricably intertwined such that confirmation would be required. Thus, Regions argued that it was entitled to summary judgment on its breach of contract claim.

---

[3] Susan also filed a cross-claim against Gordon.

Following a hearing, the trial court denied Susan's motion and granted Regions's motion.[4] The trial court found that Regions's suit was not a deficiency action, and the construction loan and 2005 line of credit were not inextricably intertwined because they did not serve the same purpose, and therefore confirmation was not required under OCGA § 44-14-161 (a). Thus, the trial court concluded that the Wellses breached the forbearance agreement and were liable for the outstanding debt.[5] This appeal followed.

In a series of inter-related arguments, Susan contends that the trial court erred in denying her motion for summary judgment and in granting Regions's motion because the loans were inextricably intertwined, and thus the instant suit was barred

---

[4] There is no transcript of this hearing. But given that the purpose of the hearing is to have argument rather than to admit evidence, the absence of a transcript does not hinder our review. See *League v. Citibank (South Dakota)*, 291 Ga. App. 866, 867-868 (1) (663 SE2d 266) (2008).

[5] After the hearing, Susan moved to supplement the record with additional documents to show the two loans were intertwined. The trial court did not explicitly rule on this motion, but did refer to the documents in its order denying her motion for summary judgment. To the extent that Susan argues the trial court erred in not supplementing the record, we discern no error. The trial court referenced the documents in its order, and the information in those documents appears elsewhere in the record.

by the failure to seek judicial confirmation of the foreclosure sale.[6] We conclude that Susan has raised a factual issue that precluded summary judgment.

"A deficiency judgment is the imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield full amount of due debt." (Citation omitted.) *Iwan Renovations, Inc. v. North Atlanta Nat. Bank*, 296 Ga. App. 125, 127 (1) (673 SE2d 632) (2009). As we have explained, OCGA § 44-14-161 (a) provides that

> when any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings obtains a judicial confirmation of the sale.

---

[6] Susan appears to argue that the loans were inextricably intertwined because the loan documents contained dragnet clauses. We have explained that a dragnet clause secures "any and all other indebtedness which said grantor may now or may hereafter owe said grantee." *Martin v. Fairburn Banking Co.*, 218 Ga. App. 803, 804 (3) (463 SE2d 507) (1995). No such language appears in the deed under the construction loan or the modified security deed under the 2005 line of credit or in any of the loan documents. Nor do the loans include language that would merge the two loans. Compare *Oakvale Road Assoc., LTD. v. Mtg. Recovery Fund-Atlanta Pools*, 231 Ga. App. 414, 417-418 (499 SE2d 404) (1998) (physical precedent only). Additionally, there is no merit to Wells's argument that it was error to place the burden of proof on her. As the party raising the defense, Wells bears the burden of proof. OCGA § 24-14-1.

6

(Citation, punctuation, and emphasis omitted.) *3 West Investments, LLC v. Hamilton State Bank*, 316 Ga. App. 796, 799 (728 SE2d 843) (2012). Thus, under Georgia law, "a creditor may not seek a deficiency judgment with respect to any real estate sold on foreclosure unless a confirmation of the sale is obtained." (Citation and punctuation omitted.) Id.

We have also applied the judicial confirmation requirement where the two separate debts at issue were inextricably intertwined. As we explained, "[d]ebts that are secured by the same property, held by the same creditor and with the assumption of the debt, and owed by the same debtor are inextricably intertwined. They are not independent of each other, and a foreclosure of one affects the other." (Citations and punctuation omitted.) *3 West Investments*, 316 Ga. App. at 800. Thus, "debts are 'inextricably intertwined' where those debts were incurred for the same purpose, secured by the same property, held by the same creditor, and owed by the same debtor." (Citation and punctuation omitted.) *Bryant v. Optima Intl., Inc.*, 339 Ga. App. 696, 703 (2) (a) (792 SE2d 489) (2016); see also *Iwan Renovations*, 296 Ga. App. at 128 (1). The purpose of the confirmation statute is "to protect debtors from deficiency judgments when their property is sold at a foreclosure sale for less than its

7

market value." (Citation omitted.) *Bank of North Ga. v. Windermere Dev., Inc.*, 316 Ga. App. 33, 38 (1) (728 SE2d 714) (2012).

The dispute here is whether the construction loan and the 2005 line of credit were inextricably intertwined so as to trigger the requirement of judicial confirmation before Regions could file suit against Susan for breach of contract. Without question, the debts were secured by the same property, always held by the same creditor, and owed by the same debtors. *Bryant*, 339 Ga. App. at 703 (2) (a).

As to whether the debts were incurred for the same purpose, Susan submitted her own affidavit and an affidavit from Gordon explaining that they obtained an equity loan in 2002 to repair stucco on the house, and that they increased this equity line in 2005 to pay off the first line of credit and make further improvements, specifically to purchase the adjacent property and build a dock on it.[7] Indeed, when the Wellses used the 2005 line of credit to pay off the first line of credit, Regions modified the security deed instead of filing a new one. Additionally, the records submitted show that the purpose of the construction loan was to build a home on the property. The disbursement request for the 2002 line of credit shows that its purpose

[7] In her affidavit, Susan also admitted that they violated the forbearance agreement, but she explained that it was signed post-divorce and Gordon was responsible for all mortgage payments.

8

was "home improvements." The 2005 line of credit was for "Personal, Family, Household Purposes or Personal Investment Purposes" and "Personal Expense."

Regions acknowledges that the 2005 line of credit paid off the first line of credit and all parties seem to agree that it also funded the purchase of the adjacent property and the construction of the dock. Regions contends, however, that a stated "purpose" of the 2005 line of credit was personal expenses regardless of the loan's actual "use" related to home improvement or construction. We are not persuaded by Regions's argument that the "purpose" was not the same as the "use." One definition of the verb "to use" is "to carry out a purpose." See https://www.merriam-webster.com/dictionary/purpose. Moreover, the "purpose" language is not a matter of statutory interpretation, but rather is a judicially created analysis. We have never held – and we do not do so here – that the analysis is as rigid as Regions suggests.

Instead, we conclude that the Wellses have created a genuine issue of fact with regard to whether the construction loan and second line of credit were for similar and related purposes, namely to improve the secured property. See *Bryant*, 339 Ga. App. at 703-704 (2) (summary judgment improper because fact question existed regarding whether loans were for same purpose); see also *Oakvale Road Assoc., Ltd. v. Mtg. Recovery Fund-Atlanta Pools*, 231 Ga. App. 414, 416 (499 SE2d 404) (1998) (loans

9

that were for a different but related purpose triggered confirmation requirement) (physical precedent only). We find additional support for this conclusion from the manner in which Regions treated the loans when it modified the 2002 security deed to reflect the 2005 line of credit. Regions used the same property to secure each of the three loans, and it accepted that the 2005 line of credit was used to purchase the adjacent property – a transaction that occurred years earlier – and construct a dock on it.

Additionally, we note that the 2005 line of credit contains language allowing Regions to charge to the credit line costs or expenses including "payments to cure defaults under any existing liens on your principal dwelling," and explaining that the borrower can be in default due to failure "to pay and perform the terms of any other deed of trust, mortgage or lease of the property." It further permits Regions to terminate the line of credit and accelerate the payment in the event of foreclosure of another lien. Cf. *Bank of North Ga.*, 316 Ga. App. at 36, 39 (1) (debt to develop subdivision and subsequent debt to build infrastructure were inextricably intertwined, noting that the loan documents contained cross-default and acceleration provisions); *C. K. C., Inc. v. Free*, 196 Ga. App. 280 (395 SE2d 666) (1990) (debts were inextricably intertwined where they were secured by the same property and the same

10

deed, and the note included an acceleration clause). When we consider this language in the 2005 line of credit documents, along with the Wellses' affidavits and Regions's acknowledgment that the second line of credit was used to pay off the first and to enable the purchase of adjacent property, we conclude that there remains a genuine issue of fact as to the "purpose" of the loans and whether the 2005 line of credit was inextricably intertwined with the construction loan. See *Baby Days, Inc. v. Bank of Adairsville*, 218 Ga. App. 752, 754 (1) (463 SE2d 171) (1995) (at summary judgment stage, "[a]ny doubt as to the existence of a genuine issue of material fact is resolved against the movant." (citation omitted)). To conclude otherwise would ignore the purpose of the confirmation statute. We decline to reach such a result.[8]

Accordingly, because factual issues remain, we affirm the trial court's denial of Susan's motion for summary judgment, vacate the trial court's grant of Regions's

---

[8] The cases Regions cites in support of its argument are inapposite because the issue in those cases was not whether the loans held the same purpose, and neither case contains any analysis of this prong. See *Devin Lamplighter, Ltd. v. American Gen. Finance, Inc.*, 206 Ga. App. 747 (426 SE2d 645) (1992) (loans were not inextricably intertwined when there were two separate debts, secured by two separate security deeds, and two different creditors); *Clements v. Fleet Finance, Inc.*, 206 Ga. App. 736 (426 SE2d 910) (1992) (loans not inextricably intertwined where there were two separate debts, secured by two separate deeds, made at different times, to different creditors, for different collateral purposes) (physical precedent only).

motion for summary judgment, and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part; vacated in part; and case remanded. Doyle, P. J., and Coomer, J., concur.*