**FIRST DIVISION**
**ELLINGTON, C. J.,**
**BLACKWELL and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 21, 2012**

# In the Court of Appeals of Georgia

A12A0560; A12A0602. BANK OF NORTH GEORGIA v.
 WINDERMERE DEVELOPMENT, INC., et al.; and vice
 versa.

A12A0561; A12A0603. BANK OF NORTH GEORGIA v. SIMON
 ROAD DEVELOPMENT, INC., et al.; and vice versa.

ELLINGTON, Chief Judge.

Pursuant to granted applications for interlocutory appeal, the Bank of North

Georgia ("BNG"), appeals from orders of the State Court of Douglas County which,

in two separate but related actions for reimbursement on letters of credit and personal

guaranties, denied the bank's motions for summary judgment. The defendants in those

suits, Windermere Development, Inc., Simon Road Development, Inc., and guarantors

Robert G. Vansant and Robert C. Belans, Jr., cross-appeal, contending that the trial

court erred in denying their cross-motions for summary judgment. Because these

appeals involve the same facts and questions of law, we have consolidated them. For

the reasons that follow, we affirm the trial court's orders denying summary judgments to BNG and reverse the court's orders denying summary judgments to the cross-appellants.

The same standard of review applies to both of these appeals and cross-appeals. Summary judgment is appropriate if the pleadings and the undisputed evidence show that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, the appellate courts conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party. *Alston & Bird LLP v. Mellon Ventures II, L.P.*, 307 Ga. App. 640 (706 SE2d 652) (2010). So viewed, the record shows as follows.

Both Simon Road Development, Inc. ("Simon Road") and Windermere Development, Inc. ("Windermere") secured loans from Citizens & Merchants State Bank ("Citizens"), BNG's predecessor-in-interest, to acquire and to develop residential subdivisions in Douglas County near the Windermere Golf Club. The subdivisions are located about three miles from each other. In 2004, Windermere and Windermere Golf Club executed two promissory notes and a deed to secure debt secured by property in Douglas County to develop the Bear Creek Subdivision, which

2

is adjacent to the golf course. The legal description of the secured property, attached to the deed to secure debt as "Exhibit A," included residential, golf course, and golf club tracts in Land Lots 4, 5, and 32 of the 1st District, 5th Section, and Land Lots 1 and 32 of the 2nd District, 5th Section of Douglas County. In 2006, in order to acquire, to hold, and to develop the Kings Bridge Subdivision, Simon Road executed two promissory notes and a deed to secure debt secured by tracts in Land Lots 75, 86, and 87 of the 1st District, 5th Section, of Douglas County.

In February 2007, Windermere Golf Club executed a new deed to secure debt covering the obligations of *both* Windermere and Simon Road, pledging as additional security for Simon Road the same golf club and course properties that secured, in part, the first note executed by Windermere and Windermere Golf Club in 2004. The 2007 deed to secure debt provided:

> That, WHEREAS, Grantor has executed this Deed to secure the obligations of WINDERMERE DEVELOPMENT, INC., SIMON ROAD DEVELOPMENT, INC., and such other entities as Grantor may request from time to time ("Borrowers"), or any of them, in favor of Grantee evidenced by one or more Letters of Credit issued to Grantee in favor of Borrowers, from time to time, together with any extensions or renewals thereof, and replacements therefore (such Letters of Credit are collectively referred to in this Deed as the "Notes"). All Notes shall

3

mature in terms less than three years from the date of execution, and shall not at any time exceed the aggregate sum of $1,755,000.00.

All of the aforementioned deeds to secure debt contained "open-end" or "dragnet" clauses that expressly provided that

> [this] instrument is . . . made and intended to secure the payment of the indebtedness of Grantor to Grantee evidenced by the Note . . ., together with *any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, however . . . incurred*, . . . and all renewal or renewals, extension or extensions, and modification or modifications and consolidation or consolidations of the Note *or other indebtedness*, either in whole or in part[.] (emphasis added.) (emphasis supplied.)

In March 2007, Vansant and Belans executed agreements in which they guaranteed Windermere's and Simon Road's payment and performance under the notes and all other indebtedness owed to Citizens. Belans was the president of both Windermere and Simon Road and a member of Windermere Gold Club, LLC. Vansant was a principal investor and secretary in both Windermere and Simon Road and served as the project manager for both subdivisions, handling construction for both projects from the same office.

In July 2007, Simon Road executed an irrevocable letter of credit application and reimbursement agreement, pursuant to which Citizens issued to Simon Road an irrevocable letter of credit in an amount not to exceed $78,750, naming the Douglas County Board of Commissioners (the "Board") as the beneficiary. Simon Road also obtained from the bank a second letter of credit, also benefitting the Board, in an amount not to exceed $176,250. Both letters of credit served as maintenance bonds for the county's development of the Kings Bridge subdivision infrastructure. In July 2008, Windermere also obtained two letters of credit from Citizens, for $229,212 and $464,520, respectively. Both of Windermere's letters of credit were likewise bonds for the county's development of the infrastructure of the Bear Creek subdivision.

Windermere's and Simon Road's reimbursement obligations to the bank pursuant to the letters of credit were secured by the golf course and club properties identified in the 2007 deed to secure debt. Each letter of credit contained identical cross-default provisions, each listing as a default event the borrower's "failure to make timely payment of any sum required to be paid hereunder, or to perform and fully satisfy any other covenant or obligation of Customer to Lender set forth herein or in the Separate Agreement or any related instrument[.]" Each letter of credit also provided that, upon default, the lender could accelerate the amount due under the

reimbursement obligation, as well as "any other agreement between the parties hereto[.]"

In May 2009, Simon Road and Windermere defaulted on their promissory notes, and, on June 2, 2009, BNG executed its power of sale under Simon Road's 2006 and Windermere's 2007 security deeds, foreclosing on all of those tracts of land securing the acquisition and development notes as well as the letters of credit. The deeds were delivered and recorded. BNG did not seek judicial confirmation of the foreclosure sales. Although BNG contends it rescinded the foreclosure sale concerning the golf course and club properties, there is no evidence in this record from which a trier of fact may reasonably infer that such had occurred.[1]

---

[1] In an "Affidavit Relating to Title" filed six months after BNG recorded its deed under power of sale concerning the "Property of Windermere Golf Club, LLC," affiant Marc D. Glenn, an attorney, averred that the foreclosure sale concerning this property was not properly advertised and is, therefore, void. The affidavit contains no statement that it was based upon Glenn's personal knowledge. The affidavit is not a publisher's affidavit, and it is unclear what Glenn's relationship to the parties is. At most, the affidavit is one concerning title under OCGA § 44-2-20, and, as the statute then in effect provided, the affidavit would be admissible in litigation "over any of the lands referred to" in the affidavit, but *only* if the party making the affidavit is unavailable to testify in court. See OCGA § 44-2-20 (b). No one has asserted that Glenn was unavailable. If it does not appear that a portion of an affidavit was made upon the affiant's personal knowledge, "that portion is to be disregarded in considering the affidavit in connection with the motion for summary judgment." (Punctuation omitted.) *Goddard v. City of Albany*, 285 Ga. 882, 887 (6) (684 SE2d 635) (2009). Disregarding, as we must, the affiant's statement's concerning the

6

In late June 2009, after BNG had foreclosed on the properties, the Board, as beneficiary of the letters of credit, demanded payment from BNG on all of the letters of credit, and BNG honored the demand.

In January 2010, BNG filed the instant actions for the amounts owed under the letters of credit and seeking statutory attorney fees. BNG filed motions for summary judgment, and Windermere, Simon Road, and the guarantors filed cross-motions for summary judgment. The trial court denied BNG's motions on the ground that issues of material fact remained for trial, but it did not elaborate on what those facts were. The trial court also denied the cross-motions for summary judgment for the same reason.

Case Nos. A12A0602 and A12A0603

1. In three related claims of error, Simon Road and Windermere contend that the trial court erred in denying their cross-motions for summary judgment. The cross-appellants contend that the debts evidenced by the reimbursement agreements in the letters of credit are inextricably intertwined with their other debts and that BNG's claims on the letters of credit amount to claims for a deficiency following the

---

propriety of the foreclosure sale, BNG has not shown that the foreclosure sale was void and subject to recision pursuant to OCGA § 9-13-172.1.

7

foreclosures and, therefore, are barred due to the bank's failure to confirm the foreclosure sales pursuant to OCGA § 44-14-161 (a). We agree.

OCGA § 44-14-161 (a) provides that,

[w]hen any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

This statute, which was enacted in 1935 during the Great Depression, was intended to relieve debtors "from the economic depression of the times. . . . [T]he aim of the legislation was stated 'to limit and abate deficiency judgments in suits and foreclosure proceedings on debts.'" *First Nat. Bank &c v. Kunes*, 230 Ga. 888, 890 (199 SE2d 776) (1973). A deficiency judgment is "a judgment for that part of a debt secured by a mortgage not realized from a sale of the mortgaged property." (Citation omitted.) *Hill v. Moye*, 221 Ga. App. 411, 412 (1) (471 SE2d 910) (1996).

8

Pursuant to the statute, before BNG is entitled to file an action to obtain a deficiency judgment against the debtors, it must report the foreclosure sale to and obtain confirmation of the sale from the Superior Court of Douglas County (where the foreclosed land was located) by showing that the sale was lawfully conducted and brought at least the fair market value of the land on the date of the sale. OCGA § 44-14-161 (b), (c). See *McCain v. Galloway*, 267 Ga. App. 505 (600 SE2d 449) (2004); *Atlanta Empowerment Zone Corp. v. Light Energy Mgmt., Inc.*, 269 Ga. App. 728, 729 (605 SE2d 124) (2004). "The statute, by using the word 'debtor,' included all who were presently subject to payment of the debt, or who might be subjected to payment thereof, if within the knowledge of the payee of the note." *First Nat. Bank &c v. Kunes*, 128 Ga. App. 565, 568 (5) (197 SE2d 446) (1073). Thus, in this context, debtors includes guarantors. See *First Nat. Bank &c v. Kunes*, 230 Ga. at 891. ("We hold that if the appellant bank expected to assert its right to indemnification from the defendants . . . under the agreements they signed, it was necessary that these parties be properly notified of the confirmation proceedings, irrespective of whether these separate undertakings were agreements of surety or guaranty."); *Hill v. Moye*, 221 Ga. App. at 413 (2) (accord).

As explained below, the requirements of OCGA § 44-14-161 (a) apply to the reimbursement agreements in the instant letters of credit because, although they are separate obligations incurred after the original 2004 and 2006 acquisition and development loans, all of the obligations are inextricably intertwined.

> This Court has applied OCGA § 44-14-161 (a) to foreclosure proceedings on separate debts which are inextricably intertwined to prevent creditors from circumventing the statute's mandates by making successive loans against the security of the same property. This prevents creditors from avoiding the very purpose of the confirmation statute[,] that being to protect debtors from deficiency judgments when their property is sold at a foreclosure sale for less than its market value. As a general rule, two debts that are incurred for the same purpose, secured by the same property, held by the same creditor, and owed by the same debtor are inextricably intertwined.

(Citations, punctuation, and footnotes omitted.) *Iwan Renovations v. North Atlanta Nat. Bank*, 296 Ga. App. 125, 128 (1) (673 SE2d 632) (2009). See also, *Tufts v. Levin*, 213 Ga. App. 35, 39 (2) (443 SE2d 681) (1994); *Oakdale Road Assoc. v. Mortgage Recovery Fund &c.*, 231 Ga. App. 414, 416 (499 SE2d 404) (1998) (physical precedent only) (accord).

In this case, Windermere and Simon Road incurred their respective 2004 and 2006 debts for the purpose of developing residential subdivisions near or adjacent to

10

the Windermere Golf Club. Although the letters of credit at issue obligated BNG to reimburse the Board, the funds were actually used by Windermere and Simon Road to build the infrastructure for the subdivisions. Thus, the debts incurred pursuant to the letters of credit and pursuant to the notes were for the same purpose, developing residential real estate. All of the debts were held by the same creditor. Finally, Windermere's and Simon Road's obligations to BNG pursuant to the letters of credit were secured by the same golf course property that secured Windermere's 2004 notes and which secured Simon Road's 2006 notes by virtue of the 2007 security deed. Because the debts were incurred for the same purpose, secured by the same property, held by the same creditor, and owed by the same debtor, they were inextricably intertwined. See *Iwan Renovations v. North Atlanta Nat. Bank*, 296 Ga. App. at 128 (1). Therefore, BNG's suits on the letters of credit must be considered suits to recover deficiency judgments. Because BNG failed to get judicial confirmation of the foreclosures sales, they are barred by OCGA § 44-14-161 (a). Id. Accordingly, the trial court erred in denying the cross-appellants' motions for summary judgment.

11

Case Nos. A12A0560 and A12A0561

2. For the reasons stated above, the trial court properly denied BNG's motions for summary judgment.

*Judgments affirmed in Case Nos. A12A0560 and A12A0561. Judgments reversed in Case Nos. A12A0602 and A12A0603. Blackwell and Dillard, JJ., concur.*