**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A1604. CARNETT'S PROPERTIES, LLC v. JOWAYNE, LLC.   DO-082

DOYLE, Presiding Judge.

Carnett's Properties, LLC, ("Carnett") filed the instant action for breach of contract and declaration of a special lien, alleging that JoWayne, LLC, ("JoWayne") failed to pay sums due under a maintenance agreement related to storm water runoff and water detention needs of the two entities' property. After the parties filed dueling motions for summary judgment, the trial court granted JoWayne's motion, finding that JoWayne was not liable under the contract for the sums in question. Carnett appeals, arguing that the trial court erred by finding that the maintenance agreement did not contemplate that JoWayne would be liable for construction of an additional detention pond. For the reasons that follow, we reverse and remand for further proceedings.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts warrant judgment as a matter of law. We review the evidence and record de novo, construing all reasonable conclusions and inferences in favor of the nonmovant.[1]

> The construction of a contract is a question of law for the court. This Court construes contracts so as to give them the meaning which will best carry out the intent of the parties. In doing this, we must look at the instrument as a whole and consider it in light of all the surrounding circumstances. Thus, the favored construction will be that which gives meaning and effect to all the terms of the contract over that which nullifies and renders meaningless a part of the document. If the trial court determines that the language is clear and unambiguous, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning.[2]

So viewed, the evidence shows that in October 2002, Carnett sold to JoWayne (which operates a daycare center) a parcel of approximately 1.69 acres of its 13.85-

---

[1] *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

[2] (Citations and punctuation omitted.) *Primary Investments, LLC, v. Wee Tender Care III, Inc.*, 323 Ga. App. 196, 198 (1) (746 SE2d 823) (2013), quoting OCGA § 13-2-1.

acre property, and at that time, the parties executed a "Declaration of Joint Easement and Joint Maintenance Agreement" ("the Agreement"). In the Agreement, Carnett provided JoWayne with a drainage easement over the property it retained after the sale, and JoWayne agreed to pay 12 percent of costs associated with the maintenance, upkeep, redesign, or improvement of the detention facility serving the total 13.85 acres of Carnett's original property.

Over the next few years, Carnett sold off additional portions of the remaining acres, entering into similar easements and agreements with those new property owners. Because of various regulations, Carnett added a detention pond to the property in order to service all of the various property owners of the 13.85 acres. The cost of this expansion was $237,442 of which 12 percent totaled $28,493.04. Carnett invoiced JoWayne for the 12 percent, but JoWayne refused to pay, contending that the agreement did not encompass the construction of a new detention pond into which its drainage did not flow.

Carnett brought suit claiming breach of contract, and the parties filed cross motions for summary judgment. The trial court granted summary judgment to JoWayne finding that the Agreement did not contemplate the construction of a new, separate detention pond. The trial court also found that the Agreement only referred

to "*the* Detention Facility," such that the plain language concluded that JoWayne was liable only for 12 percent of the sums related to the maintenance and upkeep of the then-existing detention pond and not a newly constructed detention pond.

Carnett argues on appeal that the trial court erred by ruling that the contract does not contemplate the construction of additional detention ponds.

> The cardinal rule of contract construction is to ascertain the intention of the parties. If the terms of a contract are plain and unambiguous, the contractual terms alone determine the parties' intent. A dictionary can supply the plain and ordinary meaning of a term, but a dictionary does not always provide a complete answer. If a term used in a contract is of uncertain meaning and may be fairly understood in more ways than one, it is ambiguous, and we apply the rules of contract construction in an effort to resolve the ambiguity. The proper construction of a contract is a question of law for a court to determine.[3]

The trial court used a number of pages to explain the meaning of the word "the" before determining that the detention "facility" for which JoWayne was responsible under the contract was limited to the detention pond already in use. This conclusion, however, "ignores an equally plausible and opposite construction of the [Agreement] language," i.e., that "facility" means any portion of the two properties

---

[3] (Citations and punctuation omitted.) *Garrett v. Southern Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 182 (1) (739 SE2d 661) (2013).

4

used for storm water detention to meet the needs of the two properties and their future purchasers.[4]

While it is correct that the contract initially describes the first detention pond, the contract later states that the parties

> do mutually covenant and agree that all expenses associated with any upkeep and maintenance of the detention facility including, but not limited to, *any redesign or expansion of the detention facility to meet the future needs of the Carnett Property*, the JOWAYNE property[,] and any other properties currently using the Carnett Detention Facility as of the date of this agreement shall be shared by the owner of the JOWAYNE property and the Carnett property. Each of the parties to this agreement acknowledge that the total number[s] of acres being served by the Carnett's Detention Facility is 13.85 acres.[5]

The contract specifically references anticipated future development of the remaining Carnett property and explains that those future owners would contribute to detention facility costs under a similar percentage share as JoWayne.

---

[4] *Amah v. Whitefield Academy, Inc.*, __ Ga. App. __ (1) (Case No. A14A2101; decided Mar. 18, 2015). See also Webster's Third New International Dictionary 812-813 (1981) (defining facility as "something . . . that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end").

[5] (Emphasis supplied.)

Other terms in the contract lend support to the conclusion that "facility" could mean any number of ponds in addition to or in place of the original one, i.e., "expansion," "redesign," and "improvement," which are anticipated activities for which JoWayne accepted the responsibility to pay. Redesign, for instance, means "to revise in appearance, function, or content"[6] or to "design (something) again in a different way."[7] And the contract did not limit "upkeep and maintenance" only to those listed possibilities, which renders erroneous the trial court's conclusion that the parties' failure to include "construction of a new separate detention pond" in the list of actions constituting "maintenance and upkeep" was an intentional omission that relieves JoWayne of liability for such costs.[8]

"An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of

---

[6] See Webster's Third New International Dictionary at 1902 (1981).

[7] Oxford Dictionaries Online at http://www.oxforddictionaries.com/us/definition/american_english/redesign?q=Re design

[8] See *Amah*, __ Ga. App. at __ (1).

6

doubtful purport; open to various interpretations."[9] Thus, the trial court's conclusion that the language of the contract was clear and unambiguous was incorrect. While it purported to apply the rules of construction to then reach the same conclusion based on the contract's statement that the facility served the needs of both the Carnett and JoWayne's property in order to trigger payment by JoWayne, this construction presupposes one alternative definition of facility — that it is limited to only one pond — and excludes the equally viable definition that facility in this instance could refer to a series of ponds. Moreover, the fact that JoWayne's water does not drain into the second pond does not mean that the second pond is not servicing the property because if JoWayne's storm water was not being detained in the first pond, construction of the second pond may not have been necessary.

Thus, we reverse the grant of summary judgment to JoWayne and remand the case for further proceedings.[10]

---

[9] (Punctuation omitted.) *Krammerer Real Estate Holdings, LLC v. PLH Sandy Springs, LLC*, 319 Ga. App. 393, 396 (1) (740 SE2d 635) (2012), overruled on other grounds by *Artson, LLC v. Hudson*, 322 Ga. App. 859, 862 n.1 (747 SE2d 68) (2013).

[10] See *Higginbotham v. Knight*, 312 Ga. App. 525, 528 (719 SE2d 1) (2011) ("If the contract is ambiguous, a court must apply the pertinent rules of contract construction to resolve the ambiguity and determine the intent of the parties. But if an ambiguity remains even after the application of the rules of construction, the ambiguity must be resolved at trial by a jury.") (citations omitted).

*Judgment reversed and case remanded. Miller and Dillard, JJ., concur.*