**THIRD DIVISION**
**MILLER, P. J.,**
**BRANCH and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 15, 2016**

# In the Court of Appeals of Georgia

A16A0827. BRYANT v. OPTIMA INTERNATIONAL, INC., et al.

BRANCH, Judge.

Jeffrey Bryant appeals from two separate orders of the DeKalb County Superior Court, both of which arose out of a single lawsuit and both of which were entered on the same day. The first of these orders granted summary judgment against Bryant and in favor of Optima International, Inc. ("Optima"), on a 2001 promissory note Bryant executed in conjunction with a loan he received from Optima. The second order granted summary judgment against Bryant and in favor of Innovative Consultants Group, Inc. ("Innovative"), on a 2004 promissory note Bryant gave in exchange for a loan from Innovative. Bryant argues that the trial court erred in granting summary judgment in favor of Optima because that company failed to file suit on the 2001 promissory note within the applicable limitation period. Bryant further contends that

the trial court erred in granting summary judgment in favor of both Optima and Innovative because the two entities function as Madan's corporate alter egos; because a security interest in the same piece of real property was given to secure both loans; and because after Optima foreclosed on that property, it failed to seek a confirmation of the foreclosure sale. For reasons set forth more fully below, we find that one or more questions of fact exist as to whether Optima's failure to confirm the foreclosure sale bars the claims asserted by Optima and Innovative in this case. Accordingly, we reverse the orders of judgment entered in favor of Optima and Innovative, and remand the case for further proceedings consistent with this opinion.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions." *GAPIII, Inc. v. Seal Indus.*, 338 Ga. App. 101 (789 SE2d 321) (2016) (citation omitted). Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *SKC, Inc. v. EMAG Solutions*, 326 Ga. App. 798 (755 SE2d 298) (2014).

Here, the facts are largely undisputed and the record shows that Bryant owned and operated a business known as Club Mirage, which was situated on a piece of real property owned by Bryant and located at 3843 Glenwood Road or Avenue in Decatur ("the Glenwood Property".)[1] Bryant's residence was located next door to Club Mirage, at 3837 Glenwood. At all relevant times, Golind Madan was serving as the accountant for Bryant and his business. Bryant contends that Madan is the sole or primary shareholder of both Optima and Innovative. It is undisputed that Madan controls both entities, as he serves as the registered agent, CEO, CFO, and Secretary of both corporations. On November 7, 2001, Optima loaned Bryant $200,000 for the purpose of financing Bryant's business. In exchange, Bryant executed a promissory note with a maturity date of November 7, 2006. Under the terms of the note, Bryant agreed to pay interest at the rate of 24 percent per annum; to make monthly interest payments in the amount of $4,000; to pay back the principal in an amount of not less than $20,000 on or before each anniversary date of the note; and to pay off any balance remaining under the note by November 7, 2006. The note further provided

---

[1] It appears that all of the relevant documents pertaining to the loans at issue referred to this property as being located on Glenwood Road in Decatur. The deed under power evidencing the sale of the property, however, states that the property is "commonly known as 3843 Glenwood Avenue (Road), Decatur, Ga."

that "should the indebtedness evidenced hereby or any part hereof be collected by law or through an attorney at law, borrower agrees to pay all costs of collection, including fifteen percent (15%) of the aggregate amount of principal and interest then owing here under as attorneys' fees." Additionally, the 2001 promissory note stated:

> The indebtedness evidenced hereby is secured by that certain Security Deed and [Security] Agreement from Borrower to Lender of even date herewith conveying to Lender certain real property and other collateral of Borrower located in DeKalb and Fulton Counties, Georgia (said Security Deed and Agreement, together with this Note, and any other instrument evidencing, securing, or relating to the indebtedness evidenced hereby, whether now or hereafter existing, including without limitation, all being hereinafter collectively referred to as the "Loan Documents"); some of which Loan Documents are to be filed for record on or about the date hereof in the public records of DeKalb and Fulton Counties, Georgia.

The record does not contain a copy of the security deed referenced in the 2001 promissory note, but other evidence in the record shows that on November 7, 2001,

4

Bryant gave Optima a security deed on his real property located at 3843 Glenwood Road and that this deed is recorded in DeKalb County Deed Book 12715, page 417.[2]

On March 5, 2004, Innovative loaned Bryant $345,000 for the purpose of financing Bryant's business, and in exchange, Bryant executed a promissory note in

---

[2] The record does contain a copy of the security agreement referenced in the 2001 promissory note, and that agreement granted Optima, as the secured party, a security interest in

> all inventory, equipment, appliances and furnishings now or hereafter placed upon the premises located at 3837\3843 Glenwood Road, Decatur, Georgia 30032 (the "Premises") or used in connection therewith and in which Debtor now has or hereafter acquires any right and the proceeds therefrom. As additional collateral, Debtor assigns to the Secured Party, a security interest in all of its right, title, and interest to any trademarks, trade names, contract rights, and the leasehold interests in which Debtor now has or hereafter acquires. The Security Interest shall secure the payment and performance of Bryant's promissory note of the even date here with in the principal amount of Two Hundred Thousand and No/100 ($200,000) Dollars and the payment and performance of all other liabilities and obligations of Bryant to Secured Party of every kind and description, direct or indirect, absolute or contingent, due or to become due now existing or hereafter arising.

5

favor of Innovative. Under the terms of that note, Bryant agreed to pay $131,100 in interest in 23 equal monthly installments of $5,700; repay the principal at the rate of $75,000 per year for the calendar years 2004 and 2005; and pay the remaining principal balance on March 5, 2006. Additionally, the 2004 promissory note provided that "[s]hould the indebtedness evidenced hereby or any part thereof be collected by law or through an attorney at law, [borrower] agrees to pay all costs of collection, including an amount equal to fifteen (15%) percent of [the] indebtedness, as attorney's fees." The note further stated that it was "secured by a security interest in certain real property owned by [Bryant] which is more particularly described in a Deed to Secure Debt of even date herewith, executed and delivered by the undersigned in favor of Holder[3] known as 3837 and 3843 Glenwood Road, Decatur, Georgia."[4] A copy of the Deed to Secure Debt referenced in the 2004 promissory note does not appear in the record.

---

[3] The note defined "Holder" as Innovative "together with any assignee [of Innovative] or holder [of the note]."

[4] As noted supra, Bryant's residence was located at 3837 Glenwood, and Club Mirage was located at 3843 Glenwood.

On January 1, 2007, Optima loaned Bryant an additional $498,900 for the purpose of financing Bryant's business. In exchange, Bryant executed another promissory note in favor of Optima. Under the terms of this note, Bryant agreed to pay an interest rate of 12% per annum, to pay interest on a monthly basis, and to pay the principal no later than December 31, 2008. The note further stated that it was "secured by a Deed to Secure Debt dated March 5, 2004[,] granting the Holder[5] a security interest in the real property known as 3843 Glenwood Road, DeKalb County, Georgia." The record does not contain a copy of the deed to secure debt referenced in the 2007 promissory note.

On November 6, 2007, Optima, as attorney-in-fact for Bryant, executed a Deed Under Power, in which Madan averred that Bryant had executed and delivered to Optima

> a certain Deed to Secure Debt and Security Agreement dated March 5, 2004, and recorded in Deed Book 16608, page 52, DeKalb County Georgia records as modified by First Modification Agreement dated

---

[5] The note defined "Holder" as Optima "together with any assignee of [Optima]." Thus, it may be that Innovative assigned its rights under the March 5, 2004 security deed to Optima. That question cannot be resolved based on the current evidence, however, as the record does not indicate how Optima came to have its 2007 loan to Bryant secured by the same deed to secure debt that Bryant gave to Innovative to secure the 2004 loan.

January 1, 2007 and recorded in Deed Book 19674, page 728, aforesaid records conveying the after-described property to secure the payment of a Promissory Note dated January 1, 2007 in the principal amount of Four Hundred Ninety Eight Thousand Nine Hundred and no/100 ($498,900) Dollars and a Promissory Note dated January 1, 2007 in the principal amount of Five Hundred Sixty Nine Thousand Six Hundred Eighty Seven and 81/100 ($569,687.81) Dollars[6] (the "Notes).

The Deed Under Power also described the property foreclosed upon; stated that the property had been sold at a foreclosure sale held on the first Tuesday of November, 2007 for $1,417,993.35; recited that this property was "commonly known as 3843 Glenwood Avenue (Road), Decatur, Georgia"; and asserted that "[t]he above [-] described property is conveyed *subject to a certain Deed to Secure Debt from Jeffrey D. Bryant to Optima International, Inc., dated November 7, 2001,* and recorded in Deed Book 12715, page 417, DeKalb County records." (Emphasis supplied.)

On April 23, 2008, Optima transferred the Glenwood Property to Madan. Several months later, on November 24, 2008, Bryant filed the current lawsuit against Madan, Optima, and Innovative, in which he asserted claims for fraud, fraud in the

_____

[6] The record does not contain any evidence of a promissory note in the amount of $569,687.81 executed by Bryant in favor of Optima or any other party, nor does it contain a copy of the First Modification Agreement referenced in the Deed Under Power.

inducement, breach of the duties of good faith and fair dealing, RICO, predatory lending, and conversion. Bryant also sought to set aside the foreclosure of the Glenwood Property under the security deeds he gave to secure the December 2001, March 2004, and January 2007 loans. In conjunction with this lawsuit, Bryant also filed a notice of lis pendens as to the real property Optima had foreclosed on a year earlier.[7] On January 8, 2009, an answer, defenses and counterclaims was filed apparently on behalf of all three defendants, in which they sought cancellation of the notice of lis pendens.[8] The defendants thereafter filed a brief in support of their motion to cancel the notice of lis pendens, and on February 10, 2009, the trial court

---

[7] The notice of lis pendens also covered the property at 3837 Glenwood, on which Bryant's residence was located.

[8] The pleading stated it was filed only on behalf of Innovative, but no answer from the other two named defendants appears in the record. This document, however, purports to seek relief on behalf of all defendants, as opposed to merely Innovative, and it makes certain admissions as to both Madan and Optima. Additionally, it appears from the record that all of the parties and the trial court treated this pleading as having been filed on behalf of all the defendants.

entered an order granting that motion.[9] Bryant then appealed the cancellation of the lis pendens, and this court affirmed the order in an unpublished opinion.

While Bryant's appeal of the lis pendens issue was pending, Madan filed a plea in abatement, seeking to have Bryant's claims against him dismissed.[10] During this same time period, Optima filed an amended counterclaim against Bryant seeking amounts allegedly due under the 2001 promissory note, and Innovative amended its counterclaim to seek recovery of amounts allegedly due under the 2004 promissory note. Following our decision in Bryant's first appeal and remittitur of the case to the trial court, the three named defendants filed a joint motion for summary judgment on all of the claims Bryant had asserted against them. The trial court thereafter stayed the case pending the outcome of the state court action between Madan and Bryant. Following the entry of the stay, and while the motion for summary judgment was still

---

[9] Just as the answer asserted it was filed on behalf of Innovative (as opposed to either of the other two named defendants), the brief in support of the motion for cancellation of the lis pendens asserted that it was filed only on behalf of Optima. Again, however, the parties and the trial court treated this pleading as though it had been filed on behalf of all three defendants, and the trial court's order granting the motion indicated that it was granting relief as to all defendants.

[10] In support of this plea, Madan pointed to the record evidence showing that before Bryant brought the current lawsuit, Madan had filed suit against Bryant in DeKalb County State Court, and Bryant had asserted counterclaims against Madan that were identical to the claims Bryant asserted in the Superior Court case.

pending, Optima filed a second amended counterclaim, in which it sought an order requiring Bryant to file an assignment of a security interest he held in the property located at 3837 Glenwood.[11] Optima asserted that Bryant had assigned it this security interest in 2007.

Although no order lifting the stay of the case appears in the record, the trial court heard the defendants' summary judgment motion on November 13, 2012, and it subsequently entered an order granting summary judgment to Optima and Innovative on all of Bryant's claims against the two corporate entities. In a separate order entered on the same day, the trial court granted Madan's plea in abatement and dismissed Bryant's claims against him. Approximately two months later, in January 2013, Optima and Innovative filed separate summary judgment motions as to their counterclaims. Specifically, Optima sought summary judgment on its claim for amounts allegedly due under the 2001 note and on its request for the filing of record of Bryant's 2007 assignment to Optima of his security interest in 3837 Glenwood. Innovative sought summary judgment on its claim for amounts allegedly due under

---

[11] The security interest was granted to Bryant by SJI Enterprises, Inc., on February 21, 2005. According to Bryant, SJI is another entity owned and/or controlled by Madan. Bryant testified that he sold his home, located at 3837 Glenwood, to SJI.

the 2004 promissory note. The trial court granted each of these motions, and entered

judgment in favor of Optima and against Bryant for $786,600, plus costs and post-

judgment interest.[12] The order also granted Optima the right to file a copy of the 2007

assignment as though it were an original. The summary judgment order as to

Innovative granted judgment in its favor and against Bryant in the amount of

---

[12] This amount represented $200,000 in principal, $484,000 in interest, and $102,600 in attorney fees. The amount of attorney fees was calculated pursuant to the terms of the note and OCGA § 13-1-11, which provides, in relevant part, that if such a "note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness." OCGA § 13-1-11 (a) (1). The statute further provides that

> the party requesting the attorneys fees shall submit an affidavit to the
> court with evidence of attorney's fees, and the party required to pay such
> fees may respond to such affidavit. . . . The court may hold a hearing to
> decide the matter of attorney's fees or may award attorney's fees based
> on the written evidence submitted to the court. The amount of attorney's
> fees awarded shall be an amount found by the court to be reasonable and
> necessary for asserting the rights of the party requesting attorney's fees.

OCGA § 13-1-11 (b) (2), (3). We note that in this case, the trial court made no express finding as to the reasonableness or necessity of the attorney fees it awarded to Optima.

$849,045, plus costs and post-judgment interest.[13] Bryant now appeals from each of the summary judgment orders.

1. Bryant argues that Optima's claim on the 2001 note is time-barred because Optima failed to sue on the note within the six-year statute of limitation that applies to written contracts. See OCGA § 9-3-24 ("[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable"). We disagree.

Under OCGA § 9-3-23, "[a]ctions upon bonds *or other instruments under seal* shall be brought within 20 years after the right of action has accrued. No instrument shall be considered under seal unless so recited in the body of the instrument." (Emphasis supplied.) In applying this statute, we have found that where a promissory note states that it is given under seal and the notation "seal" appears after the debtor's signature, the note is a contract under seal. *Thomas v. Summers*, 329 Ga. 250, 253 (1) (764 SE2d 578) (2014). See also, *Hixon v. Woodall*, 246 Ga. 758, 758 (272 SE2d 727) (1980). Here, the 2001 promissory note provides that Bryant "has caused this

---

[13] This amount represented $345,000 in principal, $393,300 in interest, and $110,745 in attorney fees. Again, attorney fees were calculated pursuant to the terms of the note and OCGA § 13-1-11, but the trial court made no express finding as to the reasonableness or necessity of the attorney fees it awarded to Innovative.

Note to be duly executed under seal," and the word "SEAL" appears in parentheses next to Bryant's name. Accordingly, the note was given under seal and the 20-year statute of limitation found in OCGA § 9-3-23 applies. See *Thomas*, 329 Ga. at 250 (a promissory note was given under seal where it recited that it was given "under the hand and seal of" the debtors and the notation "(seal)" appeared after the debtors' signatures); *Telfair Financial Co. v. Williams*, 172 Ga. App. 489 (323 SE2d 689) (1984). Optima's claim on the 2001 promissory note, therefore, was brought within the applicable limitation period.

2. Bryant further asserts that the claims of both Optima and Innovative are barred by Optima's failure to confirm the foreclosure sale of the Glenwood Property. We find that one or more questions of fact exist as to whether Optima's failure to confirm the foreclosure sale precludes Optima and/or Innovative from seeking to recover under the promissory notes at issue.

Under OCGA § 44-14-161 (a),

(a) When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the

14

foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

This Court has previously held that where there exist "inextricably intertwined" debts, owed to the same creditor and secured by the same property, "the creditor cannot recover a second [or subsequent] debt after foreclosing on the first debt unless the foreclosure is confirmed." *Hildebrand v. Bank of America, N. A.*, 332 Ga. App. 175, 177 (1) (772 SE2d 790) (2015). This rule results from the fact that where multiple debts are inextricably intertwined, the foreclosure of the property securing one of those debts affects all of the intertwined debts. *First Citizens Bank & Trust v. Ruddell*, 330 Ga. App. 82, 85 (766 SE2d 538) (2014). Thus, the application of the confirmation statute in these situations prevents "creditors from circumventing the statute's mandates by making successive loans against the security of the same property." *Iwan Renovations. v. North Atlanta National Bank*, 296 Ga. App. 125, 128 (1) (673 SE2d 632) (2009) (citations, punctuation and footnote omitted). See also *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 38 (1) (728 SE2d 714) (2012).

Here, Optima contends it foreclosed on the Glenwood Property under a deed that secured the 2007 loan it made to Bryant. Thus, if the 2001 and 2004 debts are inextricably intertwined with the 2007 debt, then Optima's failure to confirm the foreclosure sale would bar the claims at issue. We therefore turn to the question of whether either the 2001 loan from Optima or the 2004 loan from Innovative is inextricably intertwined with the 2007 loan from Optima.

(a) *The November 2001 promissory note to Optima.*

Under Georgia law, debts are "inextricably intertwined" where those debts were "incurred for the same purpose, secured by the same property, held by the same creditor, and owed by the same debtor." *Iwan Renovations*, 296 Ga. App. at 128 (1) (citations omitted). The record shows that the debts incurred under both the 2001 and the 2007 promissory notes are owed by a single debtor (Bryant) to a single creditor (Optima). Additionally, each of these promissory notes was secured by the Glenwood Property. Moreover, Bryant provided both deposition testimony and an affidavit that each of these loans was made to help finance Bryant's business. Optima concedes in its appellate brief that the 2001 loan was made for this purpose, and it has not disputed Bryant's assertion that the 2007 loan was made for the same purpose. Thus, the evidence is sufficient to create a question of fact as to whether the 2001 and 2007

16

loans were made for the same purpose. If both loans were made for the purpose of financing Bryant's business, then they would be "inextricably intertwined" as a matter of law. See *Bank of North Ga.*, 316 Ga. App. at 38 (1) (although the three separate obligations at issue were incurred at different times over a three-year period, they were inextricably intertwined as a matter of law where all of the individual debts were incurred by the same debtor, were obtained for the same purpose, were owed to a single lender, and were secured by the same property); *Iwan Renovations*, 296 Ga. App. at 129 (1). And if the loans are so intertwined, Optima's failure to confirm its foreclosure sale of that property pursuant to the security deed it received in conjunction with the 2007 loan would preclude it from suing to recover the amounts allegedly owed under the 2001 note. See *Bank of North Ga.*, 316 Ga. App. at 38-39 (1) (holding that a lender's suit to recover debts evidenced by letters of credit given by the debtors and that were secured by the same property securing earlier promissory notes to the lender from the same debtors was barred by the lender's failure to obtain judicial confirmation of its foreclosure under the notes); *Iwan Renovations*, 296 Ga. App. at 128-129 (1).

Optima seeks to avoid this conclusion by arguing that the foreclosure took place only under the Deed to Secure Debt Bryant executed in conjunction with the

January 2007 loan Optima made to Bryant. Thus, Optima argues that because the foreclosure did not take place under the deed given to secure the 2001 promissory note, its failure to confirm the 2007 foreclosure sale of the Glenwood Property does not preclude Optima from suing on the 2001 promissory note. This court, however, has previously considered and rejected this reasoning. In *Iwan Renovations*, the lender argued that foreclosure pursuant to the security deed as to one of the intertwined debts held by the creditor simply rendered the remaining debt an unsecured obligation, and that the creditor remained free to sue the debtors on the unsecured debt. *Iwan Renovations*, 296 Ga. App. at 128 (1). We rejected that argument, finding that because the debts were intertwined, the creditor's failure to confirm the foreclosure sale of the property securing both debts barred it from suing to recover the remaining debt. Accordingly, we reversed the trial court's grant of summary judgment in favor of the creditor. Id.

We apply the reasoning of *Iwan Renovations* here, and find that the trial court erred in granting summary judgment to Optima. Specifically, we find that given the current record, a question of fact exists as to whether the 2001 and the 2007 loans were given for the same purpose, and therefore a factual question exists as to whether those two loans are inextricably intertwined.

(b) *The March 2004 promissory note to Innovative.*

Like the promissory notes executed in favor of Optima, the debtor under the March 2004 promissory note is Bryant. Additionally, that loan was also secured, at least in part, by the Glenwood Property.[14] Moreover, in the parties' joint brief, Innovative acknowledged that the 2004 loan was also made for the purpose of financing Bryant's business. The only questions remaining as to whether the 2004 loan is inextricably intertwined with the 2001 and 2007 loans, therefore, is whether the 2007 loan was made for the same purpose as the other loans and whether the 2004 loan was made by the same lender as the 2001 and 2007 loans.

Although the 2004 loan was made by Optima and the 2001 and 2007 loans were made by Innovative, there is evidence that both of these entities were functioning as the corporate alter egos of Madan. If, in fact, Madan was using Optima and Innovative as his alter egos, then a fact finder could conclude that all three loans were made by Madan and therefore that all three debts are owed to the same creditor.

---

[14] This note was also secured by the property located at 3837 Glenwood. The current record shows, however, that Bryant subsequently sold that piece of property to SJI Enterprises. Neither the parties nor the trial court considered whether the fact that the 2004 loan was secured by additional real property (in addition to the Glenwood Property) might affect the question of whether the 2004 and the 2007 loans were inextricably intertwined. Thus, we decline to consider that question at this time.

Georgia law recognizes the alter ego doctrine, which allows the application of equitable principles "to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another."*Kissun v. Humana, Inc.*, 267 Ga. 419-420 (479 SE2d 751) (1997) (citations omitted). Under this doctrine, a corporation will be viewed as synonymous with its individual shareholders where the evidence shows

> that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of [the shareholders'] own affairs; that there is such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist, and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

*Sheppard v. Tribble Heating & Air Conditioning*, 163 Ga. App. 732, 733 (1) (294 SE2d 572) (1982), quoting *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (2) (d) (137 SE2d 619) (1964). See also *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 290 (612 SE2d 296) (2005). Evidence that an individual shareholder has used a corporation as an alter ego for the conduct of the shareholder's own affairs would include evidence showing that the shareholder "disregarded the separateness of legal entities by co-mingling on an interchangeable or joint basis or confusing the

20

otherwise separate properties, records[,] or control" of the legal entities with the shareholder's personal business. *Cobra 4 Enterprises v. Powell-Newman*, 336 Ga. App. 609, 613 (2) (785 SE2d 556) (2016) (citation and punctuation omitted).

Here, Madan is the registered agent, CEO, CFO, and secretary of both Optima and Innovative, and Madan and the corporations share a business address. Additionally, the pleadings in this case suggest that Optima and Innovative view themselves, together with Madan, as one and the same. A single attorney has represented all three entities throughout this litigation and, as noted above, the answer filed by Innovative was also treated as the answer of Optima and Madan. Moreover, the motion for cancellation of the lis pendens filed by Optima sought relief on behalf of all three defendants, and all three defendants were granted relief under that motion. And it appears from the record that Innovative agreed to the modification of its 2004 deed to secure debt to facilitate Optima's 2007 loan to Bryant. The record further suggests that Innovative may have assigned the 2004 deed to secure debt to Optima to facilitate Optima's foreclosure of the Glenwood Property. In this regard, we note that the deed under power of sale executed by Optima expressly states that Optima was exercising the foreclosure power granted it by the deed given to secure the 2004 promissory note from Bryant to Innovative, as modified at the time of the January

21

2007 loan from Optima to Bryant. The deed under power further stated that the Glenwood Property was "conveyed subject to" the deed to secure debt given by Bryant to secure the 2001 loan from Optima.[15] Finally, following foreclosure, Optima transferred the Glenwood property to Madan.

Given this evidence, we find that a question of fact exists as to whether all of the debts at issue, including the 2004 loan from Innovative to Bryant, are owed to a single creditor, namely Madan. This question, like the question of whether the 2004 loan from Innovative and the 2007 loan from Optima were given for the same purpose, must be resolved by a trier of fact. See *Renée Unlimited, Inc. v. City of Atlanta*, 301 Ga. App. 254, 260 (2) (b) (687 SE2d 233) (2009) (where there was some evidence that would support a finding that the shareholders used the corporate entities as their alter egos, it was for the jury to decide whether the alter ego doctrine should apply and allow the entities and the shareholders to be treated as one); *Soerries v. Dancause*, 248 Ga. App. 374, 375 (546 SE2d 356) (2001) (when litigated, the

---

[15] We are puzzled by the fact that none of the parties filed any of the deeds to secure debt and/or any modifications thereof, given by Bryant to secure the loans at issue. The trial court might find these documents helpful on remand, and it therefore might want to consider requiring the parties to file with the court copies of all relevant deeds, including any recorded modifications thereof.

22

question of whether the alter ego doctrine applies "is for the jury, unless there is no evidence sufficient to justify disregarding the corporate form") (citations and punctuation omitted). Accordingly, we find that the trial court erred in granting summary judgment in favor of Innovative.

For the reasons set forth above, we reverse the orders of judgment entered in favor of Optima and Innovative. The case is remanded for proceedings consistent with this opinion.

*Judgment reversed and case remanded. Miller, P. J., and McMillian, J., concur.*