**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 4, 2022**

# In the Court of Appeals of Georgia

A22A0555. FULTON COUNTY BOARD OF TAX ASSESSORS v. WESTSIDE ATLANTA RETAIL, LLC.

HODGES, Judge.

This case concerns the time frame in which a hearing-officer hearing must be scheduled following a taxpayer's appeal of an ad valorem property tax assessment pursuant to OCGA § 48-5-311 (e.1). In light of the clear language of the statute, we find that the trial court properly granted summary judgment to the taxpayer because a hearing was not timely scheduled. Accordingly, we affirm.

"Summary judgment is appropriate if the pleadings and the undisputed evidence show that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, the appellate courts conduct

a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of N. Ga v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

So viewed, the facts of this case are undisputed and the record demonstrates that the Fulton County Board of Tax Assessors ("BTA") assessed a value of $5,270,000 for property owned by Westside Atlanta Retail, LLC, located at 1100 Howell Mill Road, NW, in Atlanta, for tax year 2019. On July 31, 2019, the BTA received an appeal from Westside of the tax assessment wherein Westside proposed a value of $2,335,000. The BTA reviewed Westside's appeal and issued a "no change" letter to Westside indicating that it would not be revising the tax assessment. Westside elected to continue its appeal and have its case reviewed by a hearing officer pursuant to OCGA § 48-5-311 (e) (1) (A) (iii). On or about September 18, 2019, the BTA certified Westside's appeal to the Appeal Administrator,[1] acting on behalf of the Fulton County Board of Equalization ("BOE"), for a hearing officer appeal.

---

[1] The Appeal Administrator is the Clerk of the Superior Court. OCGA § 48-5-311 (a).

On January 31, 2020, the Appeal Administrator emailed Westside scheduling a hearing in March 2020, however, that hearing was postponed due to the COVID-19 statewide judicial emergency. On May 29, 2020, the Appeal Administrator emailed Westside again, and a hearing was scheduled and conducted on June 26, 2020. The BOE hearing officer accepted Westside's argument that the Appeal Administrator failed to timely schedule a hearing and, accordingly, Westside's proposed value became the fair market property valuation pursuant to OCGA § 48-5-311 (e.1) (6) (A). The BTA appealed the hearing officer's finding to the Superior Court of Fulton County, who granted summary judgment to Westside affirming the BOE's tax assessment.

In two related enumerations of error, the BTA contends that the trial court improperly interpreted OCGA § 48-5-311 (e.1) to make its determination that the Appeal Administrator failed to timely schedule a hearing. Given the plain language of the statute, we disagree.

At issue in this case is how long the Appeal Administrator has to schedule a hearing-officer hearing, and that issue is decisively answered by OCGA § 48-5-311 (e.1). The BTA argues that it has 180 days to review a taxpayer's appeal and that the Appeal Administrator then has a consecutive 180 days to schedule a hearing-officer

3

hearing without the penalty of the taxpayer's proposed valuation becoming the default fair market valuation of the property. Westside contends that these 180-day periods run concurrently.

> When this Court interprets any statute, we necessarily begin our analysis with familiar and binding canons of construction. When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . Further, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.

(Citations and punctuation omitted.) *Moosa Co., LLC v. Commr. of Georgia Dept. of Revenue*, 353 Ga. App. 429, 430-431 (838 SE2d 108) (2020). Indeed, "[i]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (Citation and punctuation omitted.) *Major v. State*, 301 Ga. 147, 150 (1) (800 SE2d 348) (2017).

Here, Georgia law provides that

> [a]ny taxpayer or property owner as of the last date for filing an appeal may elect to file an appeal from an assessment by the county board of

4

tax assessors to . . . [a] hearing officer as to matters of value and uniformity of assessment for a parcel of nonhomestead real property with a fair market value in excess of $500,000.00 as shown on the taxpayer's annual notice of current assessment under Code Section 48-5-306[.]

OCGA § 48-5-311 (e) (1) (A) (iii).

This process is initiated by a taxpayer filing an appeal of its assessment to the BTA.

The county board of tax assessors may for no more than 90 days review the taxpayer's written appeal, and if changes or corrections are made by the county board of tax assessors, the board shall notify the taxpayer in writing of such changes. Within 30 days of the county board of tax assessors' mailing of such notice, the taxpayer may notify the county board of tax assessors in writing that the changes or corrections made by the county board of tax assessors are not acceptable, in which case, the county board of tax assessors shall, within 30 days of the date of mailing of such taxpayer's notification, send or deliver all necessary documentation to the [A]ppeal [A]dministrator. . . . If, after review, the county board of tax assessors determines that no changes or corrections are warranted, the county board of tax assessors shall notify the taxpayer of such decision. The taxpayer may elect to forward the appeal to the board of equalization by notifying the county board of tax assessors within 30 days of the mailing of the county board of tax assessor's notice of no changes or corrections. Upon the expiration of 30 days

5

following the mailing of the county board of tax assessors' notice of no changes or corrections, the county board of tax assessors shall certify the notice of appeal and send or deliver all necessary documentation to the [A]ppeal [A]dministrator[.] . . . *If the county board of tax assessors fails to respond in writing, either with changes or no changes, to the taxpayer within 180 days after receiving the taxpayer's notice of appeal,* the property valuation asserted by the taxpayer on the property tax return or the taxpayer's notice of appeal shall become the assessed fair market value for the taxpayer's property for the tax year under appeal.

(Emphasis supplied.) OCGA § 48-5-311 (e.1) (5).

The statute then provides what happens once the appeal is certified by the BTA to the Appeal Administrator.

The [A]ppeal [A]dministrator shall randomly select from such list a hearing officer who shall have experience or expertise in hearing or appraising the type of property that is the subject of appeal to hear the appeal, unless the taxpayer and the county board of tax assessors mutually agree upon a hearing officer from such list. . . . *If no hearing officer is appointed or if no hearing is scheduled within 180 days after the county board of tax assessors receives the taxpayer's notice of appeal,* the property valuation asserted by the taxpayer on the property tax return or the taxpayer's notice of appeal shall become the assessed fair market value for the taxpayer's property for the tax year under appeal, and subsection (c) of Code Section 48-5-299 shall apply.

6

(Emphasis supplied.) OCGA § 48-5-311 (e.1) (6) (A). OCGA § 48-5-299 (c) provides, in relevant part, that "the new valuation so established by appeal decision . . . may not be increased by the board of tax assessors during the next two successive years[.]"

The BTA contends that the 180-day periods referenced in subsections (5) and (6) (A) identified above run consecutively as opposed to concurrently. In other words, the BTA argues that it has 180 days from the day the taxpayer's appeal is received by it to respond in writing, either notifying the taxpayer of changes to the assessment or refusal to change the assessment, and that, then, the Appeal Administrator has 180 days from the date the appeal is certified to it to schedule a hearing without penalty. In support, the BTA identifies, correctly, that the two subsections govern the conduct of different actors (the BTA and the Appeal Administrator) who have no control over how quickly the other acts on a taxpayer's appeal, that the Appeal Administrator can take no action until an appeal is certified by the BTA, and that violation of the different subsections involves different penalties (adoption of the taxpayer's valuation for one year as opposed to three years). The BTA contends that a contradictory reading would lead to absurd results, particularly in Fulton County, which has a high volume of tax appeals which take time to process.

7

Unfortunately for the BTA, its proposed interpretation directly contradicts the plain language of the statute. Subsection (6) (A) clearly states that the deadline for the Appeal Administrator to schedule a hearing is "within 180 days after *the county board of tax assessors receives* the taxpayer's notice of appeal." (Emphasis supplied.) OCGA § 48-5-311 (e.1) (6) (A). It does not say that the Appeal Administrator's time to schedule the hearing runs from the certification of the appeal, and there is no way to read the plain language of the statute as starting the clock for the Appeal Administrator on any day other than the day the taxpayer's appeal is received by the BTA. Whatever policy reasons are advanced by the BTA for a different interpretation given the alleged challenges this ruling will cause for it, "the doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law, nor can the legislature enlarge or diminish a law by construction." (Citation and punctuation omitted.) *Etkind v. Suarez*, 271 Ga. 352, 353 (1) (519 SE2d 210) (1999).[2] If the BTA believes the statutory

---

[2] The BTA's position is highlighted in its brief in its concession that although a "simple reading of the default provisions would have these two 180-day periods begin at the same time, to have them run concurrently makes no sense in practice." It is worth noting, however, that the proper interpretation of the statute does not lead to absurdities as contended by the BTA. Although there are no penalties in the statute

scheme contains a time line for processing tax appeals which is unworkable in practice, its avenue for redress lies with the General Assembly, not the courts.

The BTA relies on the case of *Ryan v. Commrs. of Chatham County*, 203 Ga. 730, 731-732 (1) (48 SE2d 86) (1948) for the proposition that "[i]t is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto." While this is a correct statement of the law, it does not result in us reading Subsections (5) and (6) (A) in a way which disregards their plain language. Indeed, *Ryan* goes on to say that the Supreme Court of Georgia "recognize[d] the rule that statutes in pari materia may not be resorted to where the language of the statute under

---

for failure to do so, the law requires the BTA to take no more than 90 days reviewing the taxpayer's appeal. OCGA § 48-5-311 (e.1) (5). Accordingly, if the BTA acts pursuant to the law, it should never take more than 150 days for an appeal to be certified to the Appeal Administrator (90 days for BTA review, 30 days for the taxpayer to respond if changes are made but unacceptable to the taxpayer, and 30 days for the BTA to certify the appeal in response to the taxpayer's desire to continue its appeal to a hearing officer). See id. This is obviously less than the 180 days the statute permits for a hearing to be scheduled by the Appeal Administrator without penalty.

consideration is clear[.]" Id. at 732 (1).[3] The language of these statutory provisions is clear.

Turning to the facts present here, it is evident that the Appeal Administrator did not timely schedule a hearing. The BTA received Westside's appeal on July 31, 2019. Accordingly, pursuant to OCGA § 48-5-311 (e.1) (6) (A), the Appeal Administrator needed to schedule a hearing within 180 days of that date, which was January 27, 2020.[4] The Appeal Administrator did not even contact Westside regarding a hearing date until January 31, 2020. The BOE hearing officer was correct to find that the Appeal Administrator did not timely act and, as a result, it was correct to find

---

[3] The BTA also urges us to read in pari materia OCGA § 48-5-311 (e) (3) (B). That subsection provides that in certain counties with a specified large number of tax appeals "the county board of tax assessors may be granted an additional 180[-]day period to make its determination and notify the taxpayer." The BTA argues that, because the Appeal Administrator would be unable to comply with subsection (6) (A) if the BTA took this additional 180 days, the only rational way to read that subsection is for the Appeal Administrator's deadline to run from certification of the appeal. However, OCGA § 48-5-311 (e) (3) (B) does not concern the appellate procedure for appeals to be heard by a hearing officer. The statute specifies that "[a]ppeals to a hearing officer shall be conducted in the manner specified in subsection (e.1) of this Code section[,]" OCGA § 48-5-311 (e) (1) (C). Accordingly, statutory provisions outside of that subsection will not alter our review of the plain language of the parts of Subsection (e.1).

[4] Given that this date is prior to initiation of the COVID-19 statewide judicial emergency, we do not need to consider the impact of that order and its extensions on this case.

10

Westside's asserted property valuation of $2,335,000 to be the fair market value for Westside's property pursuant to OCGA § 48-5-311 (e.1) (6) (A). The trial court did not err in granting summary judgment to Westside.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*

11